### BIZIK *v.* BIZIK.

[No. 18,316. Filed April 23, 1953. Rehearing denied June 4, 1953. Transfer denied November 20, 1953.]

*Ryan, Chester & Clifford,* of Valparaiso, and *Jay E. Darlington,* of Hammond, for appellant.

*Allen P. Twyman,* of East Chicago, and *Albert Gavit,* of Gary, (on petition for rehearing), for appellee.

ROYSE, C. J.—Appellant brought this action for damages or, alternatively, to set aside certain purported deeds of conveyance by her to appellee, her former husband.

Because we believe it will help in understanding the question presented, we set out in some detail the pleadings. The complaint was in seven paragraphs. The first alleged, in substance, she and appellee had been husband and wife for a little more than nineteen years; that during said period they became the owners as tenants by the entireties of certain described real estate in Lake and Newton Counties; that about January 7, 1949 appellee, through his attorney John Rizzo, brought an action for divorce against appellant in the Lake Superior Court; that at the time the divorce action was filed it was agreed and understood by the parties there would be no property settlement between the parties until she returned from Chicago; that on the 12th day of January, while the parties were still married, appellant signed her name to certain blank warranty deed forms, said forms being blank except her name thereon, upon the promise of appellee that he was about to sell certain of said property and that a just and true accounting of the proceeds of said sale would be made with her upon her return within six months from Chicago; that she relied on this promise

of appellee when she signed said deeds; that on the 11th day of March, 1949, appellee secured a decree of divorce from appellant by default; that she did not appear in person or by attorney at said hearing; that about March 12, 1949, appellee, or some other person acting in his behalf, fraudulently and without the knowledge or consent of appellant, completed the aforementioned instruments referred to as warranty deeds which appellant had signed January 12, 1949 in such manner that said alleged deeds recited a conveyance from appellant as a divorced and not remarried woman to appellee; that this alleged conveyance was falsely and fraudulently obtained without the knowledge, permission or consent of appellant and without consideration; that at the time appellee fraudulently induced her to sign said instruments appellee knew there were no prospective purchasers for said real estate and appellee intended to defraud and cheat her out of her just interest in said property, and he further intended to unlawfully deprive the court having jurisdiction over the divorce case of the right to determine the property rights of the parties; that she has been severely damaged by the fraud and deceit of appellee to the extent of half the value of said property and prays for damages of $45,000.00.

The second paragraph, in addition to the foregoing allegations, asks that in the event the court finds that the alleged deeds constitute a conveyance of her interest in said property, such conveyances be declared to be held in trust by appellee for her benefit.

The third paragraph in addition avers, in substance, that for some time prior to the filing of the divorce action there had been violent quarrels and arguments between these parties; that appellee employed an attorney by the name of John Rizzo who represented him

pertaining to their domestic difficulties and likewise counseled and advised him in all matters pertaining to his property interests; that said Rizzo did present to appellant the alleged deeds and did advise and counsel both of these parties as to their domestic differences and property rights; that said Rizzo represented appellee in opposition to appellant at the hearing when the divorce was granted; that appellant was advised by appellee it was not necessary and would only cost money for her to employ an attorney; that she was thereby deprived of the right to have counsel to protect her interests; that by reason of these facts appellee was placed in a position where he could and did wrongfully and unlawfully deprive her of all her interest acquired during coverture in this real estate; that since the divorce she has no property or money or means with which to support herself; that the court should declare said deeds null and void and that she be declared an owner as tenant in common with appellee of said real estate.

The fourth paragraph, in addition to the foregoing, alleged appellant had been damaged in the sum of $50,000.00.

The fifth averred she was under legal disability at the time the deeds were signed. The sixth pleaded no valuable consideration. The seventh pleaded a failure of consideration.

Appellee, by way of affirmative answer to the foregoing paragraphs of complaint, alleges, in substance, his divorce action was filed at the special instance and request of appellant; that prior to January 7, 1949, appellant employed the attorney, John Rizzo, referred to in her complaint herein, to act for her in obtaining a divorce. Rhetorical paragraph 7 of the answer is as follows:

"That pursuant to such employment, said plaintiff and said attorney conferred with this defendant and informed him of the desire of said plaintiff to be divorced from this defendant, and also informed this defendant that said plaintiff desired to be relieved of any responsibility of the care and maintenance of the four minor children, born by virtue of the wedlock of said plaintiff and this defendant; that said plaintiff did thereupon propose to this defendant that if he would proceed, through said attorney, to institute and prosecute to a successful conclusion, divorce proceedings, whereby he would secure an absolute divorce from said plaintiff and would assume the responsibility of the care, maintenance and education of said minor children and would pay the expenses of such litigation and would pay to the plaintiff the sum of One hundred dollars in cash, that she, the plaintiff, would in consideration thereof, convey by deeds of conveyance, all of her interest in and to each of the parcels of real estate described in the amended complaint herein; that when said proposal was first made to this defendant, he refused to agree to same, or to comply with any of such terms, but that later, after constant and repeated urging from said plaintiff, this defendant acceded to plaintiff's wishes and accepted the terms of her proposal, as aforesaid; that thereupon in compliance with the terms of said agreement, this defendant permitted plaintiff's said attorney, on said 7th day of January, 1949, to commence legal proceedings in order to secure an absolute divorce for this defendant from said plaintiff and to secure the care and custody for this defendant of said minor children."

It then avers, in substance, the service of summons on appellant; that in compliance with her proposal and at her special instance and request he prosecuted said action for divorce and obtained a decree of divorce March 11, 1949; that on the 14th day of March, 1949, appellant, in compliance with said agreement, caused to be delivered to him the deeds referred to in her complaint and *that he is now the owner in fee simple of all*

*said real estate;* that by reason of these facts she is estopped from asserting any right, title or interest in said real estate or to maintain any action or claim against appellee.

The issues were closed by appellant's reply denying the material allegations in each rhetorical paragraph of appellee's affirmative answer. The cause was tried to the court which, on proper request, entered its special finding of facts and conclusions of law in favor of appellee. Judgment accordingly.

Errors assigned here are that the court erred in each of its conclusions of law and in overruling her motion for a new trial. The specifications of the latter motion are that the decision is not sustained by the evidence and is contrary to law.

Appellant contends first, the facts found do not suffice to show *delicto.* Second, that even if *delicto* appears from the findings public policy requires the application by a court of equity of the exception to the *pari delicto* doctrine.

In order to understand these questions we believe it well to set out herein in full the material findings of the trial court and the substance of its other findings.

Finding No. 1—Parties were married in June, 1930 and divorced March 11, 1949.

No. 2—Four children were born to this union. At the time of the divorce they ranged in age from 11 to 19 years. Custody awarded appellee in divorce action.

No. 3—During the marriage of the parties they became the owners as tenants by the entireties of the property which is the subject of this action.

No. 4—"From the evidence the court finds that the parties for many years of their married life lived agreeably and that their habits were frugal, but that for three or four years before the separation and the divorce there came a time when quar-

rels were frequent, and that the arguments at times would extend far into the night and that the parties contemplated a period of separation from each other, having in mind that such separation might be a means of later effecting a reconciliation and the resumption of family life together with their children.

No. 5—"That in the City of East Chicago, Indiana, there was located the East Chicago Federal Building and Loan Association and that an attorney, John J. Rizzo, was the attorney for said association and practiced law generally in Lake County, Indiana, and maintained his office in the Association premises. That both the plaintiff and the defendant herein carried on banking business with such Association and made quite frequent trips thereto for the purpose of making deposits and withdrawals and for the cashing of checks in connection with their business affairs. That both plaintiff and defendant had come to know John J. Rizzo over a period of ten or twelve years; that he had handled transactions for them when they purchased property and that three or four months prior to the filing of the divorce action the plaintiff herein talked with Mr. Rizzo about the family difficulties and that before the filing of the divorce Mr. Rizzo went to the home of the parties where he conferred with them. That he advised a separation on a temporary basis so that the parties could make up their minds as to whether or not an absolute divorce would eventually have to be secured. That the plaintiff herein, Anna Bizik, some time immediately after the filing of the divorce suit, talked with Mr. Rizzo in his office; that Mr. Rizzo was counseling with both the plaintiff and the defendant; that shortly after the filing of the suit above mentioned, that said Rizzo presented to the plaintiff herein four (4) Warranty Deeds which she signed on the bottom line as 'Anna Bizik.'

No. 6—"That the defendant herein, by and through the said attorney Rizzo, filed his said action for a divorce against this plaintiff and that summons was served upon the plaintiff herein by one of the Deputy Sheriffs of Lake County, Indiana, while she was still living with her husband in the tavern and assisting in operating said business.

That the plaintiff herein did have knowledge of the filing of said divorce action.

No. 7—"That at the time the Warranty Deeds were signed as aforesaid, and at the time the divorce suit was filed, the attorney, John J. Rizzo, was acting as counsel for both the plaintiff and the defendant; that said attorney accepted payment for his fees and the court costs in the divorce action from Joseph Bizik in an amount of approximately Two Hundred Fifty ($250.00) Dollars. That on the 11th day of March, 1949, the said Rizzo together with Joseph Bizik went to the Lake Superior Court and thereupon plaintiff herein was defaulted and the cause was submitted for trial and the decree of divorce granted to Joseph Bizik. That on or about the following day on March 12, 1949, the said attorney Rizzo inserted the date of March 12, 1949, in the Warranty Deeds and caused the same to be recorded in the office of the Recorder of Lake and Newton Counties as follows: In Lake County, Indiana in Book 833 at Page 307 and in Book 833 at Page 306 and in Newton County in Book 80 at Page 186 and in Book 80 at Page 187. That no Federal Documentary Stamps were attached or affixed to any of the deeds and that each deed contained a provision as follows: 'The consideration being less than $100.00, no documentary stamps are necessary.' That the Lake County Deeds were recorded on March 14, 1949 and the Newton County Deeds on March 15, 1949, and after recording were returned to Mr. Rizzo at his law office at East Chicago, Indiana.

No. 8—"That no valuable or adequate consideration was ever paid to the plaintiff herein for any of the real or personal property. That at the time she left the family home, she advised her elder daughter of the address where she would reside at Chicago, Illinois and where she worked until her return in June of 1950. That at the time of her departure, she received the sum of One Hundred ($100.00) Dollars as expense money and that a notation of the payment of such amount to her was placed on the family financial record book.

No. 9—"That at or about the time of her said departure, she signed whatever papers were necessary in order to transfer the title to the automo-

bile and the liquor license to her husband or to a prospective purchaser. That the defendant herein now claims to be the absolute owner of all of the said real and personal property. That he did not know of the existence of the deeds until the actual time of the divorce when he was told by the attorney for the parties that he had gotten deeds from this plaintiff and was going to have them recorded.

No. 11—"That the plaintiff herein did not have the advice or counsel of any other attorney during any of the period of time covered by these findings.

No. 12—"That the plaintiff herein has not remarried, and that she is employed as a waitress in a restaurant in East Chicago, Indiana, and that she has no money, property or other means of her own beyond the property accumulated by the parties during their married life, which is now in the possession, custody and control of the defendant and of which he claims to be the absolute owner.

No. 13—"That the signature of Anna Bizik, although placed on the deeds on or about January 12, 1949, were acknowledged by Edna E. Gordon, a Notary Public of Lake County, Indiana, on the 12th day of March, 1949, at which time the plaintiff herein was residing and employed in Chicago, Illinois, and that on said date of March 12, 1949, did not appear before said Notary Public and was not at any time on said date in Lake County, Indiana.

No. 14—"That said divorce was obtained pursuant to an agreement between the plaintiff herein, the defendant herein, and John J. Rizzo, an attorney, to the effect that the divorce would be obtained by the husband and against the wife, that the husband should have the custody and control of the minor children of the parties, and that Anna Bizik, the defendant in said suit for divorce, would suffer the decree to be granted by default, and that the property rights of the parties would be settled between the parties without disclosing to the court granting the divorce any reason or necessity for adjudicating the property rights of the parties."

The court thereupon stated its conclusions of law as follows:

"1. That the plaintiff and defendant entered into an illegal agreement to obtain a divorce, which is both contrary to public policy and to the law of the State, this not being the sort of antenuptial agreement which could be said to be free from fraud and imposition and not against public policy.

"2. That the agreement of separation and divorce entered into by and between the parties hereto was such that it could not but invite disagreement, encourage separation, incite divorce proceedings, and commend a principle which would be a menace to our welfare of society, contrary to public policy, intending to overthrow and destroy every principle of the law of marriage requiring that husband and wife shall live together during their natural lives. The agreement further was one which tended to encourage a violation of the marriage vows and was one which in effect stipulated that the defendant should be relieved from the duty of support which the law of the state enjoins.

"3. That as far as the illegal agreements of the parties are concerned the parties are in *pari delicto*.

"4. That since the parties have appealed to a court of equity to settle the differences arising from their own illegal agreements, and since the parties are in *pari delicto*, the only remedy available to either of the parties in this court is defensive.

"5. That it is the duty of a court of equity when such a case is presented to leave the parties exactly where it finds them."

We proceed to consider the foregoing findings of fact to determine if they are sufficient to support the conclusions that the parties were in *pari delicto*. In short, do they show collusion between the parties in obtaining the decree of divorce? There are certain well-established legal principles to guide our consideration of the questions presented. In discussing "Public Policy as to Divorce," in 17 Am. Jur. 154, §12, it is stated:

"Marriage is a relation in which the public is deeply interested and is subject to proper regulation and control by the state or sovereignty in which it is assumed or exists. The public policy relating to marriage is to foster and protect it, to make it a permanent and public institution, to encourage the parties to live together, and to prevent separation. This policy finds expression in probably every state in this country in legislative enactments designed to prevent the sundering of the marriage ties for slight or trivial causes, or by the agreement of the husband and wife, or in any case except on full and satisfactory proof of such facts as the legislature has declared to be cause for divorce. Such provisions find their justification only in this well-recognized interest of the state in the permanency of the marriage relation. . . . As said by the Federal Supreme Court:

'Other contracts may be modified, restricted, or enlarged, or entirely released upon the consent of the parties. Not so with marriage. The relation once formed, the law steps in and holds the parties to various obligations and liabilities. It is an institution, in the maintenance of which in its purity the public is deeply interested, for it is the foundation of the family and of society, without which there would be neither civilization nor progress.' "

In 27 C. J. S., p. 620, §65, on "Collusion," it is stated:

"Collusion in the law of divorce is a corrupt agreement between a husband and wife whereby one of them, for the purpose of enabling the other to obtain a divorce, commits a matrimonial offense, or whereby for the same purpose evidence is fabricated of an offense not actually committed or evidence of a valid defense is suppressed.

"The essence of collusion is an intention to impose on the court."

In subdivision (c) of the same section, p. 621, it is stated:

". . . Collusion is not necessarily established by an agreement between husband and wife in respect to alimony pending a divorce suit, or the custody of the children, or a division of the prop-

erty in case a divorce is granted, or by the desire of either or both of the parties to be divorced. . . ." Also, Subdivision 2.

See also, 17 Am. Jur., p. 244, §187; *Bacon* v. *Bacon* (1937), 233 Ala. 482, 172 So. 632, 109 A. L. R. 830.

The case of *Stokes* v. *Anderson et al.* (1888), 118 Ind. 533, 551, 21 N. E. 331, was an action by the husband against an attorney who brought a divorce action for the wife. The Supreme Court denounced as collusive an agreement whereby a wife would ignore a cause for divorce which actually existed and allege another upon which she did not rely; that her husband would make no resistance to the action but would aid in bringing about the desired result by agreeing to pay the costs and the fee of her attorney. The court then held there was no valid consideration for the written agreement transferring property of the parties to a trustee for the benefit of the wife. The court then said:

> "That a contract made between husband and wife, in view of separation, and fully executed by the husband, fair and equitable between the parties, will be upheld, as ruled in the foregoing case, does not conflict with the conclusion we have reached. It may be that if an action for divorce is pending, or if, in anticipation of such an action, the parties meet and agree upon the amount of alimony to be allowed to the wife in case a divorce is granted, and the arrangement is just and equitable, and confined strictly to the matter of alimony, it will be sustained. But if the agreement is broader in its terms, and *its tendency is to interest the husband in procuring a divorce* or in foregoing resistance to an effort by his wife to that end, then it is contrary to public policy, and is void. (Citing authorities)." (Our emphasis.)

Assuming for argument only the findings are sufficient to sustain the conclusion that the parties were in

*pari delicto,* we are of the opinion they clearly bring appellant within the exception to the general rule that where the parties are in *pari delicto* the courts will leave them where it finds them. This exception is stated in Pomeroy's Equity Jurisprudence (5th Ed.), Vol. 3, §941, as follows:

". . . *Even where* the contracting parties are in *pari delicto,* the courts *may interfere* from motives of *public policy. Whenever* public policy is considered as advanced by allowing either party to sue for relief *against the transaction,* then relief *is* given to him. In pursuance of this principle, and in compliance with the demands of a *high public policy,* equity may aid a party *equally* guilty with his opponent, not only by canceling and ordering the surrender of an executory agreement, but *even by setting aside an executed contract, conveyance, or transfer, and decreeing the recovery back* of money paid or *property delivered* in performance of the agreement. The cases in which this limitation may apply and the affirmative relief may thus be granted *include* the class of contracts which are intrinsically contrary to public policy—contracts in which the illegality itself consists in their opposition to public policy, and *any other species* of illegal contracts in which, from *their particular circumstances,* incidental and collateral motives of *public policy* require relief." (Our emphasis.)

This exception has been recognized by this court. *American Mutual Life Insurance Company* v. *Mead* (1906), 39 Ind. App. 215, 79 N. E. 526; *Lane* v. *Gugsell* (1943), 113 Ind. App. 676, 680, 681, 47 N. E. 2d 835 (Transfer denied). While those cases did not relate to divorce actions, it seems to us the principle they state applies with particular emphasis to the facts herein.

In the case of *Gardine* v. *Cottey* (1950), 360 Mo. 681, 230 S. W. 2d 731, 18 A. L. R. 2d 1110, the facts were

somewhat analogous to those herein. In that case the court said, pp. 1111-1113 (18 A. L. R. 2d) :

"Respondent's evidence shows that an uncontested divorce was bargained for. We hold that the contract was illegal, void and against public policy. . . .

"The contract was void and unenforceable and the rights of the parties were not changed by its execution. . . . He (Cottey) prepared the quit claim deed to the farm in question, obtained Mrs. Gardine's signature thereto and represented her in carrying into effect the void contract.

"When Cottey consented to represent Mrs. Gardine in the divorce action, he became her attorney and fiduciary with the duty to represent, advise and protect her interest, which he could not do in view of his position as Gardine's attorney. On the admitted facts he was bound to know that Mrs. Gardine's interests directly conflicted with those of his client Gardine; and that her interests were not being served. . . . The fraud was consummated, not by the execution of illegal contract, but by Cottey's action in acting as her attorney in the institution and consummation of the divorce action and in the execution and delivery of the conveyance under the contract. Cottey knew that she was acting without the advice of or assistance of a disinterested counsel who was free to represent and advise her. . . .

"The relation between attorney and client is highly fiduciary and of very delicate, exacting and confidential character, requiring very high degree of fidelity and good faith on attorney's part. . . .

"It is immaterial that both the husband and the wife consented for Cottey to represent her in the divorce case. . . . On his own testimony, Cottey could not properly represent Mrs. Gardine in the divorce action or in making the conveyance under the contract. . . .

"The right to relief in part turns on whether Mrs. Gardine and her then husband were in pari delicto with reference to the illegal contract. In our opinion, she was not. The entire matter on Gardine's behalf was handled by Cottey, and Cot-

tey's action and conduct with reference to obtaining the contract were Gardine's action and conduct.

"In matters of *public policy* our courts are confronted with a duty that is *paramount* to the pecuniary interests of litigants and it is our duty to heed that higher duty. . . ." (Our emphasis.)

Therefore, even if the findings were sufficient to sustain the conclusions that the parties were in *pari delicto*, under the authorities cited herein it would be inequitable, unjust and contrary to sound public policy to permit appellee to use that doctrine as a sword to retain all of the property he received pursuant to such an illegal agreement. Particularly when all this property was acquired by the mutual effort of the parties during their marriage. However, we are of the opinion the facts found by the court do not sustain its conclusions of law.

We believe the findings of fact in this case lead inescapably to the conclusion that the delictum in this case was on the part of attorney Rizzo and appellee. Finding No. 7 states this attorney was acting as attorney for both parties at the time the divorce action was filed and when appellant signed the questioned deeds. Finding No. 11 states appellant did not have the counsel or advice of any other attorney during these transactions. The findings do not show this appellant was advised by Rizzo of her legal rights in the property involved herein. They show she received no adequate or valuable consideration for the property which her efforts and frugality helped to acquire and she is now penniless and works as a waitress in a restaurant. They show conclusively this attorney, acting in a fiduciary capacity for appellant, *violated every canon of decency, honesty and ethical standards which an attorney owes to his client*. When an attorney at-

tempts to represent both parties in litigation, he perpetrates a fraud on the court. He cannot serve two masters. *Ayres* v. *Smith* (1949), 227 Ind. 82, 89, 90, 84 N. E. 2d 185, 7 C. J. S. 823, §47. "Ye cannot serve God and mammon." Luke 16, 13. While the findings show appellee did not know of the existence of the deeds until the time of the divorce, they do show he now claims to be the absolute owner of all this property. In our opinion he is not entitled to retain the property obtained by the fraudulent, dishonest conduct of his paid attorney. *Public Savings Insurance Company of America* v. *Greenwald* (1918), 68 Ind. App. 609, 617, 118 N. E. 556, 121 N. E. 47; *Brown* v. *New York Life Insurance Co.* (1945), 152 Fed. 2d 246, 250, 2 C. J. S., pp. 1139, 1141, §64.

Assuming that the allegations of appellee's affirmative answer were sufficient to permit evidence establishing that the parties were guilty of collusion in obtaining the decree of divorce, then perhaps under the *pari delicto* doctrine; in a proper action, the divorce decree could and should be set aside. *That would leave the parties where the court found them.* But in this case appellee does not attempt to obtain this remedy. Nor could he, because the record conclusively shows he has remarried since the divorce. Therefore, having accepted the benefits of the divorce he may not retain the property he received as a result of what he now avers was an illegal agreement between the parties and Rizzo for its procurement. *Arnold* v. *Arnold* (1933), 95 Ind. App. 553, 183 N. E. 910; *Davis* v. *Davis* (1951), 229 Ind. 414, 418, 99 N. E. 2d 77.

Finally, it is shown by the findings and the undisputed evidence that the deeds involved herein were not legally executed and are therefore void.

In view of the conclusions we have reached, there is

no necessity for a new trial in this case. Therefore, the judgment is reversed with instructions to the trial court to restate its conclusions of law in accord with the views expressed herein.

## On Petition for Rehearing

ROYSE, J.—Appellee, through additional counsel, has filed a voluminous petition for rehearing, which is based more on rhetoric than legal reasoning.

He first contends we erred in holding the findings of fact lead inescapably to the conclusion the delictum in this case was on the part of attorney Rizzo and appellee. He says this error arose to a large extent because we were incensed at the attorney's conduct. However, he does not condone that conduct. We retract not one word that we said in our original opinion about such conduct.

He further states this error was occasioned by our discussion of collusion, and then asserts that while the rule may be different in other states, "under Indiana law *any* contract for a divorce is *ipso facto* illegal whether collusion be present or not." In support of this statement he cites from Indiana only the case of *Jordan* v. *Kittle* (1928), 88 Ind. App. 275, 150 N. E. 817, 821 (transfer denied). That case does not sustain his contention. The contract which this court condemned in that case was a collusive contract. It is set out in some detail in the opinion. We quote one of the provisions of the contract from pp. 279, 280 of the opinion which demonstrates this.

"The fourth section of this contract provides: That at the time of the delivery of said transfers, conveyances and personal property by appellant to Henry Eitel, Mrs. Jordan should deliver to said Eitel 'in a sealed package not to be opened by him, all affidavits, statements, documents, other writings

and things relating to the alleged cause of action for divorce on grounds other than cruel treatment, by whomsoever made,' together with affidavits of Mrs. Jordan's attorneys, stating that such affidavits and writings constituted all affidavits, statements and writings in their possession or in the possession of Mrs. Jordan, her agents, or representatives, or in existence to their knowledge, which might in any way reflect upon or make charges against the character or conduct of appellant, and which statements, documents and writings should, at the time of the delivery by said escrow of said assignments, transfers, conveyances, cash and bonds to Mrs. Jordan, be examined and inspected by appellant's attorney and by no other person whomsoever, and, after such examination and inspection, the same should be burned and destroyed by said escrow in the presence of the attorneys for appellant and his wife."

Repeatedly this court in that case pointed out the collusive iniquity of that contract. See pp. 287 to 294. We approve the holding therein.

An exhaustive research of the decisions of our Supreme Court and this Court discloses only where there was some form of collusion, as defined in our original opinion herein, were such contracts questioned.

We adhere to the conclusions reached in our original opinion on the question of delictum, also the exception to the rule in cases where the parties are in *pari delicto,* and the invalidity of the deeds.

Our conclusions and mandate were based on the insufficiency of the findings of fact to sustain the conclusions of law.

Appellee further contends that even though the case should be reversed for this reason, our mandate deprived him of the right to a new trial and therefore should be modified to permit a new trial of this cause.

We have carefully examined the evidence most favorable to the appellee and are of the opinion such evidence

would not sustain the judgment of the trial court. However, it is possible that in another trial additional evidence could be presented which might sustain appellee's defense. Therefore, in the interests of justice we modify our original mandate directing the trial court to restate its conclusions of law and hereby direct said court to sustain appellant's motion for a new trial.

Petition for rehearing denied.

NOTE.—Reported in 111 N. E. 2d 823.

Rehearing denied in 112 N. E. 2d 760.