HOLMES *v.* HOLMES.

[No. 767A34. Filed June 24, 1969. Rehearing denied August 13, 1969.]

*Thomas W. Munger, George E. Weigle,* of Lafayette, for appellant.

*Robert E. Peters,* of Lafayette, for appellee.

LOWDERMILK, P.J.—Mr. Robert E. Peters, the attorney representing the appellee in this appeal, was not trial counsel in the original action.

Plaintiff-appellant brought her action for divorce against defendant-appellee; divorce was granted appellant and the property settlement agreement entered into between the parties was approved by the court. Thereafter, appellant, within the term in which the divorce was granted, filed her motion to vacate and set aside the judgment and property settlement alleging fraud as the reason therefor. The trial court overruled appellant's motion to vacate and set aside the judgment and property settlement. Appellant filed her motion

for new trial, which the court overruled, and this appeal followed.

The sole specification of appellant's motion for new trial here considered is that the decision of the court is contrary to law. The memorandum on said motion is as follows, to-wit:

"MEMORANDUM

A.

The evidence shows clearly and without dispute that the plaintiff did not receive adequate or independent legal representation in that she was taken by her husband from Logansport State Hospital, at Logansport, Indiana, where she was a patient, to the office of his own attorney, which attorney gave her no advice, made no investigation or inquiry as to the facts of the case, did not know that the defendant was worth in excess of a quarter of a million dollars in assets possessed by him, made no inquiry as to the worth of the defendant's assets, and merely caused to be typed out and submitted to the plaintiff for signature a property settlement agreement as dictated by the defendant.

B.

The evidence shows clearly and without dispute that the plaintiff was incompetent to handle any business affairs or to protect her own interests at the time of executing the property settlement or agreement, as admitted by the husband, the defendant, and received no legal or other independent advice thereon but was represented by the defendant's attorney who was purportedly representing her at the same time.

C.

The evidence shows clearly and without dispute that the property settlement agreement was not entered into fairly, without fraud, duress or undue influence on the part of the defendant against the plaintiff.

D.

The evidence establishes without conflict that the plaintiff's execution of the property settlement in said cause was procured by fraud, duress, undue influence and overreaching on the part of the defendant against the plaintiff.

### E.

The evidence shows clearly and without dispute that the plaintiff was under the domination, influence and control of the defendant at all times involved in said cause, and that she had been physically beaten, abused and put in fear by the defendant, and that the instituting of divorce proceedings and the execution of the property settlement agreement were not the free and voluntary acts of the plaintiff.

### F.

The evidence clearly shows without dispute that the defendant did not discharge his fiduciary duty to plaintiff and that he took advantage of her weakened physical and mental condition to force her to get a divorce which she did not want and to execute a property settlement without fair and loyal legal representation.

### G.

The evidence shows without dispute that the defendant did not discharge the burden cast upon him to show that the property settlement executed by the plaintiff in this cause was fair and free from fraud, duress and undue influence on his part.

### H.

The evidence established without dispute that the plaintiff did not have her 'day in court' with independent legal counsel loyal to her best interests, whom he represented in other business matters, and that she failed to have representation dedicated to her best interests.

WHEREFORE, plaintiff respectfully prays that she be given a new trial herein."

The appellant's motion for new trial was overruled by the court.

Appellant's assignment of errors is as follows:

"The appellant avers that there is manifest error in the judgment and proceedings in this cause, which is prejudicial to appellant, in this:

1. The trial court erred in overruling appellant's motion for a new trial."

Appellee filed in this court his verified motion to dismiss, setting forth as the reason that the appellant was remarried on the 26th day of January, 1968, and thereby accepted the benefits of the decree of divorce, to which pleading appellant filed her verified motion to strike motion to dismiss appeal or to overrule said motion, which verified motion set out that appellee had remarried on June 24, 1967. We must first determine if appellant's remarriage precluded her from proceeding with her appeal; if so, we must sustain the motion to dismiss and if not, we must deny said motion.

It is readily apparent from the briefs that appellant's whole case is predicated upon fraud and, accordingly, she is not precluded by any rule that her remarriage forfeits her right for relief from a wrong decision by the trial court. In the case of *Arnold* v. *Arnold* (1932), 95 Ind. App. 553, 183 N. E. 910, the court said:

"The adjudication of the property rights between a husband and wife in a divorce proceeding is such an integral part of the judgment as that, *in the absence of fraud,* it cannot be separated from the decree for divorce. The appellant is not to be heard to accept the benefits of the judgment without likewise accepting the burdens thereof." (Our emphasis)

In the case of *Finke* v. *Finke* (1963), 135 Ind. App. 65, 185 N. E. 2d 623, 191 N. E. 2d 499, wherein the appellant's motion for new trial attacked the entire decree, the court said:

"The adjudication of the property rights of the parties in a divorce proceeding and the award of alimony is such an integral part of the judgment as that, in *the absence of fraud,* a separation thereof from the decree for divorce cannot be had." (Our emphasis.)

Our Supreme Court, in the case of *Sidebottom* v. *Sidebottom* (1968), 249 Ind. 572, 233 N. E. 2d 667, said:

"1. The overwhelming weight of authority is to the effect that an appellant having recognized the validity of a judgment and decree of divorce rendered in a court of competent jurisdiction and having jurisdiction of the persons by accepting the favorable and/or beneficial

provisions thereof, financial and/or marital, accruing to him thereunder, *in the absence of fraud*, is estopped from questioning the validity of such judgment or decree from and after the acceptance of such benefit or benefits. From and after such acceptance, an appellant *is prohibited from proceeding to perfect or maintain any appeal from the same.*" (Our emphasis)

This appeal being based on fraud, it is within the exception of the rule "in the absence of fraud" and thereby appellant did not forfeit her right to appeal the property settlement because of the fraud perpetrated upon her as shown by the evidence, as hereinafter set out.

For the reasons above set forth, appellee's motion to dismiss is denied.

We will now proceed to dispose of this case on the merits.

The record and briefs show that the parties hereto were duly married and the appellant bore the appellee two children, a boy, born October 4, 1953, and a girl, born November 14, 1955. As the years passed by the appellee accumulated an estate of approximately $300,000, mostly by inheritance from his mother and father, while he was engaged in a radio sales business of his own, which failed with some indebtedness against the same. In the year 1955, appellant had a nervous breakdown from which she recovered about two years before the divorce. Appellant's place in appellee's life was taken by another woman (who will be designated as "Mary", without naming her further). In 1966, appellee was keeping company with Mary, whom he took to Chicago and Wisconsin, and continued to keep company with her until the time of the divorce.

The parties, during coverture, became addicted to the excessive use of alcohol, and each drank excessively at home and at public places. Appellant first started treatment for alcoholism about 1956; she was attended by a Dr. Martin for two or three years, and later a Dr. Stuntz, another psychiatrist, for four or five years. Appellee was seeing these psychiatrists at the same time.

Appellant was committed to Logansport State Hospital as an alcoholic in February, 1956, and released early in April of the same year. After a week and a half she again voluntarily returned for ninety days' commitment and remained there until released. Appellee took appellant home on week-ends— Saturday and Sunday—and they would drink together at taverns and at home. She would often be under the influence of alcohol when returned to the institution on Sunday nights.

Appellee wrote appellant a letter, proposing a divorce, while appellant was in the Logansport State Hospital. Although she did not want a divorce, then, or even at the time of the trial, appellee arranged for his attorney at Lafayette, Indiana,[1] to represent her in bringing an action for divorce against him. Thereafter, appellee secured appellant's release to him on a week-end pass from the Logansport State Hospital and drove her to his attorney's office at Lafayette, stopping en route at Delphi during the noon hour and both drinking, with the appellant drinking two martinis. During the journey from Logansport to Lafayette, appellee claims to have effected a property settlement with his wife, which settlement he directed said attorney to prepare for execution of the parties.

Appellant, appellee and this attorney met in said attorney's office shortly after the noon hour, talked together, and appellant then talked with this attorney in private and agreed to the getting of a divorce and to a property settlement. This attorney drafted the property settlement while purporting to act as appellant's attorney and incorporated therein the provisions as hereinafter set out.

Although this attorney knew of appellant's alcoholic problem and her confinement in the State Hospital for treatment, it appears that he made no inquiry as to her physical condition or as to her emotional condition of alcoholism, acute depres-

---

[1] Appellee had in his employ this attorney, from the years 1960 through 1966, who did some collections for him and who, shortly before the filing of appellant's action for divorce, drafted articles of incorporation for appellee.

sion, fear and submissiveness as they might affect her judgment and will to resist appellee's demands. It does not appear that he made any effort to determine the nature or extent of appellee's substantial assets or to determine whether such settlement agreement as directed by appellee was fair to appellant. This attorney also did not advise appellant of her rights pertaining to the amount of alimony to which she might be entitled. The record discloses that said attorney, while preparing said property settlement agreement for submission to appellant, as her attorney, inserted in the settlement agreement, on his own initiative, a provision depriving her of the right to claim the two minor children of the parties as dependents for tax purposes and giving such right, instead, to appellee, without regard to the consideration of who furnished the major portion of their support. The attorney submitted the settlement agreement containing such tax dependency provision to appellant for signature while she was still under treatment at the Logansport State Hospital, which property settlement agreement appeared to make a substantial distribution of shares of stock to appellant by way of alimony. The shares of stock appearing to be set over to appellant were, in fact, her own and had been pledged as security on a debt of appellee's radio business corporation in the sum of $30,000. Appellee persuaded her to put up 2,251 shares of Duncan Meter Electric Corporation stock as collateral when he had at that time enough Duncan stock to have put up all the collateral from his own holdings. The property settlement agreement arranged by appellee further required appellant, in order to get her stock back, to pay $9,000 of the debt created by the Holmes Radio Sales Company because she had been a nominal director of such corporation.

Appellant executed the residence affidavit for the divorce and the property settlement agreement while in and a voluntary patient at the Logansport State Hospital. Appellant, while a patient and on leave from the hospital, after her release and during the pendency of the action, continued to

drink heavily, as the appellee well knew. Appellant admits she did talk with the attorney furnished her by appellee out of appellee's presence, but had no independent advice from other counsel prior to the hearing, at which she appeared and testified in response to questions asked by said attorney.

The record and briefs further disclose appellee was present in the court house at the time of the trial of the cause and neither appeared to the action nor entered the court room, and the prosecuting attorney appeared, as required by law, and filed answer for and in behalf of the State of Indiana. The cause was submitted to the court without the evidence being taken by the reporter, and a decree entered granting a divorce to the appellant and approving the property settlement agreement offered by appellee's attorney representing appellant. No inquiry was made as to the assets of appellee or the fairness of the property settlement agreement, and none was made as to appellant's physical, mental or emotional condition.

Appellee's attorney, representing the appellant, did not file a petition *pendente lite* for custody, suit and support money and attorney's fees in behalf of the appellant. When the case was heard on its merits, custody of the two minor children was given to appellant and appellee ordered to pay $50 per week for their support, when he was worth approximately $300,000. No mention was made of medical and dental care for the children, which might be needed by them.

The record on the motion to vacate the judgment showed that this attorney received a fee of $879.00 for his services in the default divorce case, which was paid by the appellee.

After the decree of divorce was entered the appellee neglected to perform the separation agreement and endeavored, through this attorney, who represented appellant in the divorce action, to deprive appellant of the family house which had been given her in the agreement by arranging to have it conveyed to the minor children of the parties instead of the

appellant. At this time appellant refused to acquiesce in the wishes and demands of appellee and consulted other counsel as to her rights and the proceedings to vacate and set aside the decree of divorce and property settlement agreement were then begun during the term in which the decree was rendered. The appellee appeared to such proceedings and a trial was had thereon.

The evidence at the trial of these latter proceedings was taken by the official reporter of the Superior Court of Tippecanoe County, Indiana.

During the trial on the motion to vacate a psychiatrist testified that, in his opinion, appellant was a subservient personality, dominated and controlled by her husband, and he had seen her on one occasion when she was hospitalized from a beating by her husband because she refused to let him give $8,000 from the family funds to a widow's children for a college trust fund. The doctor saw her pending the divorce action, at which time she described a number of fantasies and dreams which were self-berating and she was unable to resist or try to resist appellee's manipulative efforts. This psychiatrist testified further that she had such a low opinion of herself that it was difficult or impossible for her to resist her husband's demands.

The parties' banker, in answer to a question as to appellant's attitude, physical condition, mental condition, and general reactions during conferences with her husband and the banker, said: "I formed the impression that she was to some extent dominated by her husband. She seemed always submissive to him and deferred to his wishes."

. The appellee himself testified that she was not competent to handle her own business affairs at the time of the trial, or at the time of entering into the property settlement agreement.

In this action where the evidence introduced gave rise to a presumption of fraud the burden of coming forth with evi-

dence sufficient to overcome the presumption shifts to the appellee to prove that there was no fraud perpetrated on the court or on the appellant. See *Kratli* v. *Booth, infra.*

The attorney, purportedly representing appellant as her attorney of record, in the divorce action, made it appear that he was representing only her. However, there is evidence that he was actually acting as attorney in behalf of appellee and in so doing he was thereby representing both parties. We are of the opinion that under these circumstances a fraud was perpetrated upon the court.

"When an attorney attempts to represent both parties in litigation, he perpetrates a fraud on the court. He cannot serve two masters."

*Bizik* v. *Bizik* (1953), 124 Ind. App. 146, 111 N. E. 2d 823; 112 N. E. 2d 760.

"As between husband and wife, the husband, in the absence of facts showing otherwise, is presumed to exercise a superior, dominating influence over the wife in business affairs to such an extent that she depends upon and suffers her conduct to be controlled by his wish and judgment.

The confidential relation and the transaction having been shown, the burden of proof is upon the person occupying the superior position to establish the integrity of his claim. (Citing cases.)

In *McCord* v. *Bright, supra,* this court in commenting upon and quoting from *Farmer* v. *Farmer* (1884), 39 N. J. Eq. 211, said, 'In such cases the rule that fraud will not be presumed is reversed. The principle is well stated in *Farmer* v. *Farmer, supra,* as follows: 'It may be stated as universally true that fraud vitiates all contracts, but as a general thing it is not to be presumed, but must be proved. Whenever, however, the relations between the contracting parties appear to be of such a character as to render it certain that they do not deal on terms of equality, but that either on the one side, from superior knowledge of the matter derived from a fiduciary relation, or from over-mastering influence, or, on the other, from weakness, dependence or trust justifiably reposed, unfair advantage in a transaction is rendered probable, then the

burden is shifted, the transaction is presumed void, and it is incumbent on the stronger party to show affirmatively that no deception was practiced, no undue influence was used, and that all was fair, open, voluntary and well understood.' "

*Kratli* v. *Booth* (1934), 99 Ind. App. 178, 191 N. E. 180. See also: *Blasche* v. *Himelick* (1965), 140 Ind. App. 255, 210 N. E. 2d 378.

The evidence in the case before us clearly discloses that the appellee did not overcome this burden.

The trial court in hearing the motion to vacate the judgment had an opportunity to protect himself and the appellant by voiding the fraud perpetrated on the court and appellant and removing any question of bad faith and do equity to the parties, but failed to avail himself of this opportunity and to vacate the judgment.

Although there are no statutory grounds preventing an attorney for plaintiff from representing the defendant in the matter of a property settlement agreement and custody and support agreements, and though it be not illegal it may be considered highly unethical for the reason that divorce actions are contested matters under our law. The prosecuting attorney by statute is required to appear and contest the action where the defendant defaults and we feel that the procedure of counsel preparing a property settlement agreement for both parties under such circumstances is bad practice, as it may open the door to collusion or fraud.

Therefore, it is our opinion that the trial court should not permit an attorney to represent both sides in a divorce action. Furthermore, an attorney should not present the trial court with an agreed property settlement or custody and support agreement executed by both sides unless it is satisfactorily shown that the defaulting party has conferred with competent counsel prior to or during the execution of the proffered settlements, or such party is competent to fully understand and does, in fact, understand, the contents

of the instrument and its effects, and the same is entered into without compulsion or duress. We believe this procedure is necessary in order to guarantee that each divorce granted and property settlement and custody and support agreement entered into remain free from any fraud, duress, undue influence, or collusion.

In *Blasche* v. *Himelick, supra,* Judge Carson, speaking for this court, quoted with approval from the case of *Stockton* v. *Ford* (1850), 111 How. 232, 247, 52 U. S. 232, 247, 13 L. Ed. 676; and we think it appropriate to repeat this same language here:

> " 'There are few of the business relations of life involving a higher trust and confidence than that of attorney and client, or, generally speaking, one more honorably and faithfully discharged; few more anxiously guarded by the law, or governed by sterner principles of morality and justice; and it is the duty of the court to administer them in a corresponding spirit, and to be watchful and industrious, to see that confidence thus reposed shall not be used to the detriment or prejudice of the rights of the party best owing it.' "

We quote the following language from 98 ALR 2d 1235 (1964):

> "It is a basic principle of professional conduct that an attorney must faithfully, honestly, and consistently represent the interests and protect the rights of his client, and that he is bound to discharge his duties to his client with the strictest fidelity, to observe the highest and utmost good faith, and to inform his client promptly of any known information important to him."

In our opinion, the trial court's failure to purge the record of this fraud and vacate the judgment is reversible error. The trial court heard evidence on the motion to vacate the judgment which certainly warranted the granting of appellant a divorce from appellee and would, in our opinion, because of the fraud perpetrated on appellant, permit him to let the divorce already granted stand. *Sidebottom* v. *Sidebottom, supra.*

It further being a fact in this case that each of the parties hereto have remarried and the court could only work a hardship on them to reverse the divorce action, the court will not disturb that part of the judgment, but insofar as it grants alimony and support payments by the fraudulent property settlement and custody agreement, the judgment is reversed, with instructions to grant a new trial on the matter of property settlement, alimony, and support payments.

Costs taxed to appellee.

Carson, Cooper and Sullivan, JJ., concur.

NOTE.—Reported in 248 N. E. 2d 564.