Public Savings Insurance Company of America *v.* Greenwald.

[No. 9,463.   Filed January 30, 1918.   Rehearing denied November 27, 1918.]

1. Principal and Agent.—*Unauthorized Acts of Agent.—Ratification.—Effect.*—A principal may ratify the unauthorized acts of his agent, and, when so ratified, such acts become as binding upon the principal as they would have been had such agent been duly authorized in the first instance.  p. 614.

2. Appeal.—*Review.—Evidence.—Sufficiency.*—If there is any evidence to sustain the trial court's finding, it is sufficient on appeal, although such evidence may be strongly contradicted and not entirely satisfactory.  p. 615.

3. Appeal.—*Evidence.—Sufficiency.—Scope of Review.*—In determining whether there is any evidence to support the finding of the trial court, the court on appeal must consider not only that which may be said to be direct, but, also all reasonable inferences which the trial court may have drawn.  p. 615.

4. Principal and Agent.—*Unauthorized Acts of Agent.—Ratification.—Evidence.*—In an action on an alleged account stated, wherein defendant contended that its agent had no authority to make the settlement in controversy, evidence held to justify the inference that defendant had full knowledge of the settlement soon after it was made.  pp. 615, 617.

5. Evidence.—*Failure to Produce Favorable Witness.—Presumption.*—Where a person has it within his power to produce a wit-

ness, presumably favorably disposed toward him, to explain a transaction, and fails to do so, the presumption is that the testimony, if produced, would be unfavorable to him. p. 617.

6. PRINCIPAL AND AGENT.—*Ratification.—Scope.*—A principal who adopts the act of one professing to act for him must' adopt it *in toto,* and will not be permitted to claim the benefit arising therefrom, and at the same time repudiate the burden thereof. p. 617.

7. ACCOUNT STATED.—*Requisites.—Partial Settlement.*—It is not necessary that an account stated should cover all the dealings between the parties, or that it should include all the claims between them, and either party may show that the balance found was struck upon a partial, and not a general, accounting. p. 623.

8. ACCOUNT STATED.—*Comprehensiveness. — Presumption. —* While an account stated is *prima facie* to be taken as a settlement of all valid items of debit and credit existing between the parties at the time of its statement, this presumption is rebuttable. p. 623.

9. ACCOUNT STATED.—*Conditional Claims.—Presumption.*—There is no presumption that a contingent or conditional liability or claim is included in an accounting, and this rule applies to a claim not due. p. 623.

10. ACCOUNT STATED.—*Evidence.—Conditional Claims.*--In an action on an alleged account stated, evidence showing that certain items which were conditional and not due were not canvassed at the time of the settlement between the parties was insufficient' to negative plaintiff's theory of an account stated. p. 623.

11. PRINCIPAL AND AGENT.—*Ratification.—Proof by Inference.*—Ratification by the principal of the acts of his agent may be inferred from facts and circumstances proved. p. 624.

12. EVIDENCE.—*Proof.—Inferences.*—An inference founded on a proved or known fact may be used as the basis for another inference. p. 624.

13. PRINCIPAL AND AGENT.—*Ratification.—Evidence.*—In an action on an alleged account stated, evidence held sufficient to warrant the inference that the settlement in controversy made by an agent was ratified by the principal. p. 625.

14. PRINCIPAL AND AGENT.—*Compromise by Agent.—Ratification.*—The acceptance and retention by the principal of money, property or other benefit as the result of a compromise or settlement by an agent of a claim in favor of or against the principal constitutes a ratification of the compromise or settlement, unless he is without knowledge of the facts. p. 626.

From Marion Superior Court (98,132) ; *Vincent G. Clifford,* Judge.

Action by Henry Greenwald against the Public Savings Insurance Company of America. From a judgment for plaintiff, the defendant appeals. *Affirmed.*

*Korbly & New,* for appellant.
*Williams & Schlosser,* for appellee.

BATMAN, P. J.—Appellee sued appellant in the court below to recover on an alleged account stated amounting to $55.50. Appellant answered by general denial, and also filed a counterclaim against appellee, in which it alleged in substance that it is a corporation engaged in the insurance business; that on October 30, 1914, it employed appellee, under a written contract, to act as agent for it in soliciting and writing insurance; that in pursuance of such contract, which is made a part of such counterclaim by exhibit, appellee acted as its agent for such purpose until about January 8, 1915; that during such time appellee solicited and wrote certain insurance policies on behalf of appellant, which were officially lapsed subsequently to said last-named date; that by the lapsing of said policies there was created against the account of appellee, under and by virtue of their said contract, a charge of $123.15, which is a just and valid claim against appellee in its favor; and that the amount which would otherwise be due appellee is withheld by it in accordance with the terms of their said contract. Appellant filed an answer to said counterclaim, in which he admitted the execution of the contract mentioned therein, and alleged facts showing his performance thereunder, a dispute in their account, and threatened litigation, a settlement of such dispute by an agreement that such employ-

ment should cease and such contract be at an end, a canvassing of their said account, and the striking of a balance due appellee, amounting to $55.50, which appellant agreed to pay, but had failed to do so. Trial was had by the court on the issues thus formed, resulting in a finding for appellee in the sum of $55, and judgment was rendered accordingly. Appellant filed a motion for a new trial, which was overruled, and has assigned such ruling in this court as the sole error on which it relies for reversal. Appellant bases its right to a new trial on the alleged reasons that the decision of the court is not sustained by sufficient evidence and is contrary to law.

The questions presented for our determination require a consideration of the evidence, which, briefly stated, tends to show that appellee was employed by appellant, under a written contract, to work for it in its insurance business; that such employment was made through its agent, C. Harlan, to whom appellee reported during the progress of his work and who was charged with the duty of looking over his accounts and directing him as to his work; that, after appellee had worked for appellant a few months under such employment, some difference arose between them with reference to certain collections, and because of such difference appellee did not pay over to appellant certain moneys he had collected for it in the course of his employment; that thereafter said C. Harlan called on appellee at his home in an effort to procure a settlement of such difference; that on such occasion appellee informed said Harlan that he would go down to appellant's office the next day and make settlement, and would then discontinue the employment; that appellee met said Harlan at the time

and place agreed, where the account between appellant and appellee was then canvassed to determine the status of such account with a view of making a final settlement and terminating appellee's employment under such written contract; that as a result of the canvass of such account for such purpose it was found that appellee owed appellant $59 on account of collections made, and appellant owed appellee $55.50 for services rendered; that said Harlan was unwilling to accept from appellee the difference between said accounts in settlement, but stated that the way to avoid trouble was for appellee to pay what he owed appellant, and that appellant would then pay him the said $55.50 in about a week; that appellee agreed to this arrangement, and in consideration of such promise so made to him gave said Harlan his check on the Farmers' Trust Company, payable to appellant, for the sum of $32.10; that said check was dated January 8, 1915, and bore on its face the following words: "Payment in full of all indebtedness," and was so written to serve as a receipt as appellee stated at the time; that soon after receiving such check said Harlan took the same to said trust company, and after indorsing appellant's name thereon received the money therefor on its behalf; that appellee paid appellant the remainder of said $59 on Wednesday following such settlement; that in making such settlement no claim was made that anything further would become due appellant under said contract, but the amount to be paid appellee thereunder was definitely fixed and determined by said settlement to be $55.50, which was to be paid him within the time named.

The contention arises over the effect of such settle-

ment. Appellee contends that it resulted in an account stated, which is the subject of this action, and that there is evidence which at least tends to prove every material fact necessary to his recovery, while appellant asserts the contrary. It contends in effect that the evidence fails to show that such agent had any authority to bind appellant by an account stated, but, on the other hand, affirmatively shows that he had no such authority. In support of this contention appellant claims that, according to the provisions of the written contract of employment, such settlement, at the time it was made, could only result in an account stated by changing the terms of such contract, which by its express provision could only be done by its president; that there is no evidence which tends to prove that such officer made or authorized any change thereof, or that such change was ratified by it, and hence there was a failure to prove an account stated. On this contention it may be said that, if it be conceded that, although C. Harlan was appellant's agent, he was without authority to make such settlement, still the question of ratification remains for our determination. It is well settled that a principal may ratify the unauthorized acts of his agent, and, when so ratified, such acts become as binding upon the principal as they would have been had such agent been duly authorized in the first instance. 2 C. J. 519; *Fouch* v. *Wilson* (1877), 59 Ind. 93; *United States Express Co.* v. *Rawson* (1886), 106 Ind. 215, 6 N. E. 337; *Indiana Union Traction Co.* v. *Scribner* (1911), 47 Ind. App. 621, 93 N. E. 1014; *Crumpacker* v. *Jeffrey* (1917), 63 Ind. App. 621, 115 N. E. 62.

The finding of the court for appellee was a finding

of every material fact essential to his right of recovery, whether based on original authority in such ·agent to make such' settlement, or on appellant's ratification of his unauthorized act. If there is any evidence to sustain such decision, it is sufficient on appeal, although it may be strongly contradicted and not entirely satisfactory. *Thompson* v. *Beatty* (1908), 171 Ind. 579, 86 N. E. 961; *Warner* v. *Jennings* (1909), 44 Ind. App. 574, 89 N. E. 908; *Hollingsworth* v. *Hollingsworth* (1912), 50 Ind. App. 137, 98 N. E. 79; *Monongahela River; etc., Coke Co.* v. *Walts* (1914), 56 Ind. App. 235, 105 N. E. 160; *Public Utilities Co.* v. *Cosby* (1915), 60 Ind. App. 252, 110 N. E. 576. In determining whether there is any such evidence, this court must consider not only that which may be said to be direct, but also all reasonable inferences which the trial court may have drawn from the established facts. *Bronnenberg* v. *Indiana Union Traction Co.* (1915), 59 Ind. App. 495, 109 N. E. 784; *Southern Product Co.* v. *Franklin Coil Hoop Co.* (1915), 183 Ind. 123, 106 N. E. 872; *Union Traction Co.* v. *Haworth* (1918), 187 Ind. 451, 115 N. E. 753, 119 N. E. 869; *Carter* v. *Richart* (1917), 65 Ind. App. 255, 114 N. E. 110.

An examination of the evidence discloses that appellee was the only witness who testified as to the circumstances and terms of such settlement, which was in effect substantially as we have stated. After he had testified and rested his case in chief, appellant offered no evidence to contradict appellee's evidence in that regard, but called its president to testify regarding other matters, mainly explanatory of the provisions of the contract in question. During the course of his examination as a wit-

ness he testified in substance that he was acquainted with appellee; that he was at one time appellant's agent, but was not in its employ now; that he was familiar with his account, and with the settlement supposed to have been made with him on January 8, 1915; that he was not present when such settlement was made, but had the reports made to him from the office where the work was done and correspondence had. It should be noted that this admission of knowledge as to appellee's account and as to such settlement was made after appellee had testified with reference to its purpose and terms, and appellant thereby had been fully informed as to his contention in that regard; that, notwithstanding such fact, the president of appellant, who, by the terms of such contract, was the only person clothed with authority to alter the same, made such admission, without claiming that the facts with reference to such settlement, with which he admitted he was familiar, were different from those to which appellee had testified. True, appellant's president, on objection of appellee, was not permitted to state the particulars of such settlement, because his knowledge of the same was obtained from reports made to him from the office where the work was done and the correspondence had, still he was not denied the privilege of denying the authority of Harlan to make such settlement, or knowledge of the facts and circumstances to which appellee had previously testified concerning the same. Such denial would have been proper, but it was not made. It should be further noted that appellant did not produce as a witness the agent, Harlan, the only person known to have been present at such settlement other than appellee, nor account for his absence. It is well

settled that, where a person has it within his
5. power to produce a witness, presumably favorably disposed toward him, to explain a transaction, and fails so to do, the presumption is
4. that the testimony, if produced, would be unfavorable to him. *Indiana Union Traction Co.*
v. *Scribner, supra.* Under all the circumstances the trial court would have been justified in finding that the facts with reference to such settlement were correctly shown by the evidence of appellee, and further justified in drawing the inference that appellant had full knowledge thereof soon after such settlement was made.

It has been held that ratification means the adoption of that which was done for and in the name of another without authority; that it is a question of fact, and ordinarily may be inferred from the conduct of the parties, including silence with knowledge of the facts, and knowingly accepting benefits from an unauthorized act; that such knowledge, like other facts, need not be proved by any particular kind or class of evidence, but may be inferred from facts and circumstances; and that ratification by corporations may be proved in like manner. *National Life Ins. Co.*
v. *Headrick* (1916), 63 Ind. App. 54, 112 N. E. 559;
*Indiana Union Traction Co.* v. *Scribner, supra.* It is
a general rule of agency that a principal, who
6. adopts the act of one professing to act for him,
must adopt it *in toto,* and will not be permitted to claim the benefit arising therefrom, and at the same time repudiate the burden thereof. *Adams Express Co.* v. *Carnahan* (1902), 29 Ind. App. 606, 63 N. E. 245, 64 N. E. 647, 94 Am. St. 279; *Cleveland, etc., R. Co.* v. *Blind* (1914), 182 Ind. 398, 105 N. E.

483, 491; *Hunt* v. *Listenberger* (1895), 14 Ind. App. 320, 327, 42 N. E. 240, 964; *Reeves & Co.* v. *Miller* (1911), 48 Ind. App. 339, 95 N. E. 677.

It is not claimed that appellant has returned or offered to return any of the benefits it received from such settlement. . Under such circumstances and the rules stated, the trial court may have found that such settlement had been ratified, and by reason of such fact rendered judgment for appellee. There was substantial evidence tending to sustain such finding, and hence, under the well-established rule stated *supra,* we are bound thereby.

Judgment affirmed.

Ibach, C. J., Caldwell, J., and Dausman, J., concur. Hottel, J., and Felt, J., not participating.

## On Petition for Rehearing.

Batman, J.—Appellant has filed a petition for a rehearing, and insists with much earnestness that this court erred in its conclusions in this case. As much of its contention is predicated on the provisions of a contract between the parties, introduced in evidence by appellant on the trial, we here set out such portions as appear to be material to such contention. This contract, after reciting the fact of appellee's appointment as agent of appellant, and specifying certain duties of appellee thereunder, contains, among others, the following provisions:

"6. That I am to receive a special salary equal to the amount shown in the following schedule, based upon my weekly collectible debit, as follows: When my debit is less than $20, I am to receive $5 per week. When $20 and less than

$30, I am to receive $6 per week, etc.   *   *   *

"6a.  I am to have no interest in the collections I make and am not to be entitled to any special salary for making said collections until the gross sum thereof has been paid over by me to the company in cash.

"7.  That in addition to the amount specified in clause six, an increase salary is to be paid to me, amounting to fifteen (15) times the net increase of my collectible weekly debit; but should a decrease in the amount of my weekly debit occur at any time, a charge is to be made against my account equal to the increase salary which would have been due me on the same amount of increase, which charge can be offset by the production of further net increase in debit or by the payment of the amount in cash, or my special, or increase salary or both may, in the discretion of the company be withheld until the indebtedness is satisfied.

"7a.  It is agreed that not until I have remitted to the company all collections made by me each week, and from week to week, am I to be allowed any special salary, increase salary or any other compensation for my services.  It is further agreed that I shall have no claim on the compensation provided for in this agreement until after the total amount called for by my account has been remitted to the company in full by me while in their employ, and that I shall not be entitled to receive special salary for collecting my debit only, but that I do hereby agree to continue to canvass for and to write insurance for

the company through the entire week until Saturday of the week in which I claim special salary.

"7b. It is hereby agreed that all money collected by me belongs to the company, and is to be paid over by me to the company in cash at such time or times as provided for in this agreement or the company's rules. I am not to retain any part of said money for my service as special salary, increase salary or for any other purpose.

"8. Should business of any description be transferred to me, no increase salary is to be paid on the increase in my collectible weekly debit resulting from such transfer, but only on the amount of net increase shown after deducting the amount transferred and such transferred business, if subsequently lapsed, will not affect my increase salary, if reported by me for lapse at such time as to admit of the official lapsing for a date within the period prescribed by the company's rules.

"8a. It is agreed that I am to receive no increase salary on policies transferred to my account from another agent or the company's debit.

"9. Should business of any description be transferred from my agency, the decrease in my collectible weekly debit resulting from such transfer is not to be charged against my increase salary, provided the business becomes chargeable under the company's rules and this agreement, to the agent to whom it is transferred. It is, however, expressly agreed that all policies officially transferred from my agency, either during my term of service with the company or after the termination of my employment, either by resig-

nation, dismissal or otherwise, and reported for lapse at such time as to admit of the official lapsing without charge, under the company's rules against any agent who has received the transfer of the policies, shall be charged against my account in accordance with this agreement.

"10. That if any business is transferred from my agency, and it is again transferred before the agent who received it from me has held it long enough to become chargeable with it under this agreement, I am to be held responsible in case of its lapse, unless some one of the agents who received it in transfer has retained the business long enough to become chargeable with it under this agreement.

"11. That if my collectible weekly debit should decrease in any week, and I should subsequently claim increase salary on any future increase of business, it will only be payable upon the net increase from the last date the increase salary was allowed.

"12. That in case any policy or policies in my agency become lapsible under the company's rules through default in payment of premiums and I fail to report such policy or policies to the company for lapse at the time specified in said rules, the arrears in excess of the amount regularly allowed by the company are to be charged to my account.

"13. That I am to be allowed to draw increase salary only to the amount the character of the new business, after investigation, will in the opinion of the company warrant.

"14. It is expressly agreed that I am not to

be entitled to any special salary or increase
salary until all the conditions and agreements
contained in this agreement have been fully com-
plied with by me.

"15.   That should the arrears on my account
be deemed excessive by the company, or my
collection below the percentage of the debit
prescribed by the company's rules, special salary
and increase salary may be withheld until the
rules are complied with.   *   *   *   Note.—The
terms and conditions as herein set forth may be
altered only by the president of the company.
Therefore, any arrangement differing from this
agreement, unless approved by the company, will
be null and void.''

Appellant admits that the issues under which the
case was tried, and the respective positions taken by
the parties on appeal, are fully and accurately stated
in the court's opinion, and in its argument in support
of its petition for a rehearing, expressly adopts the
court's summary of the facts and circumstances
shown in evidence, with two added statements, one
of which is that appellee admitted on cross-examina-
tion that certain items of his account were not can-
vassed at the time of the alleged settlement, and that
their computation was to be a matter of later con-
cern.   Appellant contends that this admission in itself
serves to negative appellee's theory of an account
stated between the parties.   The facts with reference
to such added statement are that, after appellee had
stated that appellant's agent, Harlan, had said to
him in the course of the settlement that he was not in
the employ of the company, and was not liable under
the contract, he was asked by appellant's attorney to

give Harlan's words in that regard, and answered: "Just the verbatim words I don't remember, but the essence was when we were making the settlement, he said I wasn't to be employed any more under this contract, and wasn't to write any other business, and the prospects would be turned over to the next man, and I would get the commission out of it anyhow." In answer to appellant's contention in this regard, it may be noted that it is not necessary that

7. an account stated should cover all the dealings between the parties, or that it should include all claims between them, and either party may show that the balance found was struck upon a partial and not a general accounting. 1 C. J. 683, 708. Thus it has been held that an account stated for the transactions of one month is not affected by the fact that the transactions for a subsequent month were not brought into it. *Harrison* v. *Birrell* (1911), 58 Ore. 410, 115 Pac. 141. While an account stated is *prima facie* to be taken as a settlement of all valid

8. items of debit and credit existing between the parties at the time of its statement, this presumption is rebuttable. Moreover, there is no

9. presumption that a contingent or conditional liability or claim is included in an accounting, and the same is true of a claim not due. 1 C. J.

10. 708. The evidence relied on by appellant to defeat the account stated only tends to show that certain items of commissions growing out of "prospects," which were evidently contingent and conditional and hence not due, were expressly excluded from such settlement. This could not have the effect for which appellant contends.

Appellant also calls attention to the fact that the

first step taken by it, after appellee had rested its case, was to identify and read in evidence the contract between the parties. It contends that this instrument precluded, as a matter of law, the statement of an account arising thereunder, which would be binding on appellant, unless it was represented at the time by its president; that no attempt was made to discharge that burden through the introduction of affirmative evidence, and that no inference stated in the court's opinion could properly serve to supply the missing proof. If it could be said that this contention was tenable, the question of ratification would still remain, as stated in the original opinion. Ratification may be inferred from facts and circumstances proved. *National Life Ins. Co. v. Headrick* (1916), 63 Ind. App. 54, 112 N. E. 559. But appellant contends that in the instant case the court in arriving at its conclusion on the question of ratification violated the settled rule that one inference cannot be based on another. In making this contention appellant has evidently failed to give the rule stated its proper interpretation. It is well settled, both on reason and authority, that such rule does not preclude the use of an inference as the basis of another inference, provided the first inference is founded on a proved or known fact. *Hinshaw* v. *State* (1896), 147 Ind. 334, 47 N. E. 157; *Cleveland, etc., R. Co.* v. *Starks* (1915), 58 Ind. App. 341, 106 N. E. 646; *Indian Creek Coal, etc., Co.* v. *Calvert, ante* 474, 119 N. E. 519, 525, 120 N. E. 709. In the case last cited it is said: "An inference so drawn becomes a fact in so far as concerns its relation to the proposition to be proved. It merges itself into the proved fact from which it

was deduced, and the resulting augmented fact becomes a basis for other proper inferences. To assign to an inference properly drawn a position inferior to an established fact would in effect nullify its probative force.''

When this rule, as properly construed, is applied to the facts and circumstances of this case, it leaves no substantial ground for appellant's contention. Appellee testified on the trial, among other things, that a difference existed between the parties as to the status of their account under the contract in question; that appellant's agent, Harlan, assumed to make an adjustment of this difference with appellee on behalf of appellant, in which it was agreed that the sum of $59 was due from appellee to appellant on account of collections made, and that the sum of $55.50 was due from appellant to appellee for services; that appellee paid appellant the said sum agreed to be due it, on the promise of said Harlan that appellant would pay appellee the sum agreed to be due him in a few days thereafter. Appellee was the only witness who testified in this regard. After he had thus testified, the president of appellant was called as a witness and admitted that he was familiar with the details of said adjustment, but failed to deny that such facts were different from those given in evidence by appellee. This circumstance was sufficient to justify the inference that the details, which he admitted he knew, were the same as had been given in evidence by appellee, notwithstanding the fact that he was not permitted to give incompetent evidence of the terms thereof. A letter in evidence, written by appellant's said president to the attorneys of appellee, tended to show that he re-

ceived his information regarding such adjustment a short time after it was made. There was no evidence that the amount paid by appellee to appellant in pursuance of said adjustment was ever returned or tendered to appellee, and no claim is made that this was done. The contract itself provides that "any arrangement differing from this agreement, unless approved by the company, will be null and void." This is a strong circumstance indicating that appellant contemplated the making of settlements, by agents without authority, which should thereafter be ratified by it. These facts and circumstances, aided by the inference stated, are sufficient to warrant the further inference that the adjustment in question had been ratified by appellant.

Appellant also contends that appellee could not acquire any rights against his principal by making an adjustment of their differences through the agent, Harlan, as his limitations in that regard were known to him through the express terms of the contract, and furthermore that the evidence showed that appellant through its president was denying any liability to appellee within a few days after the alleged settlement, which important fact appellant asserts was omitted from our former opinion. However, it is apparent that such facts would not preclude appellant from ratifying the adjustment made by its agent, and therefore are not material factors in determining the question under consideration.

It is finally contended that the contract between the parties shows that appellant was legally entitled to the amount which appellee paid it, and therefore no inference of ratification can be based on the fact that it retained the same. In mak-

ing this contention appellant has evidently overlooked the fact that this amount was paid by appellee as the result of an adjustment of an existing difference, and therefore the rule which it seeks to invoke does not apply. It has been held that the acceptance and retention by the principal of money, property or other benefit, as the result of a compromise or settlement by an agent of a claim in favor of or against the principal, constitutes a ratification of the compromise or settlement, unless he is without knowledge of the facts. 2 C. J. 493, 504. Under the facts and circumstances of this case, it would be manifestly unjust to permit appellant to secure the fruits of an adjustment of a difference with appellee, and then deny him the inducement which led him to yield the same.

Petition for a rehearing denied.

NOTE.—Reported in 118 N. E. 556, 121 N. E. 47.