PHILIP J. CAITO, IV., AND JOSEPH CAITO D/B/A CAITO FOODS *v.* INDIANAPOLIS PRODUCE TERMINAL, INC.

[No. 2-573A125. Filed December 26, 1974.]

*Charles E. Barker,* of Indianapolis, *E. C. Ulen, Jr.,* of Indianapolis, for appellants.

*John P. Price, Grace M. Curry, Donald L. Jackson, Paul J. Corsaro, Bingham Summers Welsh & Spilman,* of Indianapolis, for appellee.

## CASE SUMMARY

BUCHANAN, J.—Defendant-Appellants Philip J. Caito, IV (Philip IV) and Joseph Caito (Joseph), d/b/a Caito Foods (Caito Foods) appeal a contempt judgment issued by the trial court in favor of Plaintiff-Appellee Indianapolis Produce Terminal, Inc. (Terminal) and against Caito Foods for violating a permanent injunction. Caito Foods claim the judgment is not supported by sufficient evidence, and that the judgment wrongfully anticipated a future violation by ordering incarceration without first requiring a hearing to show cause for such violation.

We affirm in part and reverse in part.

## FACTS

The evidence most favorable to Terminal is that Caito Foods (Philip J. Caito, IV and Joseph Caito d/b/a Caito Foods) leased Units #318-320 from Terminal at its warehouse located at 4101 Massachusetts Avenue, Indianapolis, Indiana. Caito Foods is in the business of wholesaling fruits and vegetables. Phil Caito, Jr., father of Philip IV and Joseph Caito, is a tenant in the same warehouse and is also engaged in the produce business, operating under the name of Phil Caito & Sons.

Prior to November 17, 1971, Phil Caito, Jr., apparently acting on behalf of Caito Foods, requested permission from Terminal for the making of certain alterations to Units #318-320, including complete enclosure of the dock area immediately adjacent to these units. Some of the proposed alterations were approved, but enclosure of the dock area was specifically rejected by Terminal.

Thereafter, enclosure of the dock area was commenced without Terminal's permission. Terminal then (November 17, 1971) sought an injunction against Philip Caito, Jr. and Caito Foods enjoining the unauthorized construction—and a Temporary Restraining Order was issued.

An Agreed Entry permanently enjoining Caito Foods from making any improvements other than those authorized by Terminal was entered on November 24, 1971:

> "Come now the parties, by counsel, and stipulate and agree that the following Entry be approved by the Court in the above entitled cause of action as follows:
> "1. The Plaintiff hereby dismisses, with prejudice, this cause of action as to Philip Caito, Jr.
> "2. The Restraining Order and Supplemental Restraining Order, without notice, heretofore issued are hereby dissolved; however, Plaintiff, as principal, and American Surety Company, as surety, are hereby released and discharged from any and all liability on said Restraining Order Bond issued heretofore.

."3. Philip J. Caito, IV and Joseph Caito, d/b/a Caito Foods, the defendants herein, are permanently enjoined and restrained from constructing or causing to be constructed improvements on the premises leased to the defendants at 4101 Massachusetts Avenue, Units 318-320, Indianapolis, Indiana, except such improvements as authorized in writing by plaintiff on September 24, 1971, to-wit:

"(a) covering the dock at said leased premises;
"(b) installation of a 15-foot addition to the back dock of said premises; and
"(c) a covering for the said 15-foot addition to the back dock;

and defendants can resume and complete such authorized improvements begun by Morehouse Construction Company which plaintiff agrees to pay for upon presentation of a statement of the costs of the same."

Thereafter, on December 14, 1972, Terminal filed a Motion For Contempt of Court alleging that Caito Foods wilfully and flagrantly violated the Court's permanent injunction of November 24, 1971, by constructing a complete enclosure of "the dock at said leased premises". The next day the trial court incorporated Terminal's Motion in an Order To Appear And Show Cause of why Caito Foods should not be found in contempt of the permanent injunction.

On January 8, 1973, a hearing was held on Terminal's Motion For Contempt and the following facts were revealed:

Philip Caito, Jr. first mentioned to Philip IV in late summer, 1972, the possibility of enclosing the dock area. Philip IV told his father that he did not want nor did he need the dock enclosed. At this time the father did have knowledge of the Court Order permanently enjoining Caito Foods from constructing any improvements on the leased premises. Nevertheless, in October the father requested a contractor to submit a bid for the enclosure of the dock with overhead doors, and thereafter in December, 1972, construction again began.

Philip IV became aware of the enclosure of the doors after construction began, but did not report this fact to Terminal, nor did he make inquiries or request the construction be stopped. Caito Foods used the enclosed dock daily both during construction and thereafter.

The trial court, attempting to summarize the position of Caito Foods, prompted this exchange:

"THE COURT: And your story is, as I understand it now, is that somebody came along and put those doors up there and made that enclosure and you don't know anything about it, other than it was done?

"PHILLIP CAITO, IV: Other than that it was done, right."

At the close of the hearing the trial court entered its judgment:

"Defendants are found in Contempt of Court for permitting the erection and construction of overhead doors and framework thereof enclosing a part of the dock area adjoining the space leased by Defendants from Plaintiff. Defendants ordered to remove overhead doors and framework thereof by February 15, 1973, without damages to Plaintiff's premises, and failing to so remove, Defendants are ordered committed to jail on showing the Court that Defendants have not complied with this Court Order." (Contempt Judgment herein)

## ISSUES

ISSUE ONE: Was there sufficient evidence of violation of the permanent injunction to justify issuance of the Contempt Judgment?

ISSUE TWO: Is the Contempt Judgment defective because it wrongfully anticipated a future violation by providing incarceration without first requiring a hearing to show cause for any such violation?

· As to ISSUE ONE, Caito Foods argues that there is insufficient evidence to support any agency relationship which would impute to them the unauthorized actions of their father of enclosing the dock. And even if bound by any agency relationship, the enclosure did not violate the permanent injunctive order because such enclosed dock cannot be considered to be "on the premises leased" to which the permanent injunction was directed.

In reply, Terminal asserts that the action of Caito Foods was such as to ratify the actions of their father, thereby establishing an agency relationship. Further, the permanent injunction was contemplated by both parties and the trial court to include the dock as being part of the leased premises.

As to ISSUE TWO, Caito Foods claims it was erroneous for the trial court to anticipate a future breach of the contempt order by providing for incarceration without first requiring a prima facie showing of cause for the breach.

Terminal points out that the Contempt Judgment specifically provides for a "showing" that a further violation has occurred.

## DECISION

### ISSUE ONE

CONCLUSION—It is our opinion there was sufficient evidence of violation of the injunction in that Caito Foods ratified construction of the dock enclosure specifically prohibited by the Agreed Entry of November 24, 1971, (Permanent Injunction).

A father in the same business in the same warehouse as his two sons, and who had previously acted in their behalf, causes a dock to be enclosed with knowledge of an injunction prohibiting such action. The sons (Caito Foods) use the forbidden improvement daily . . . and do nothing.

Having heard the evidence pointing up these facts, the Trial Judge at the contempt hearing asked this question of trial counsel:

"Well, as I understand the law now, I can draw reasonable inferences and conclusions on the circumstances and evi-

dence as presented. Now, are you suggesting that I conclude here that the Good Fairy came along and enclosed the dock area around your clients and just left it there and they're using it and I'm not to do any more about it?"

The trial court properly concluded from the direct and circumstantial evidence before him that whether the Good Fairy enclosed the dock area or not there was sufficient evidence indicating that Caito Foods *acquiesced* in the dock enclosure.

Acquiescing in the doing of a prohibited act while at the same time reaping the benefits is tantamount to ratification. *Public Savings Insurance Co.* v. *Greenwald* (1918), 68 Ind. App. 609, 118 N.E. 556; *National Life Insurance Co.* v. *Headrick* (1916), 63 Ind. App. 54, 112 N.E. 559.

Caito Foods cannot silently munch on the fruit forbidden by the court's injunction and expect the court to believe their "eyes were closed". *Hale* v. *Hale* (1920), 74 Ind. App. 405, 423, 126 N.E. 692; *Public Savings, supra.*, 68 Ind. App. 609, 617, 118 N.E. 556; *National Life, supra.*, 63 Ind. App. 54, 58, 112 N.E. 559; *Seavey, Agency* (1964), § 37B, p. 67.

As aptly stated in *Seavey:*

"[Ratification] . . . does not require a manifestation of contempt to the agent, to the other party, or anyone. However, the proof of this may consist merely of inaction. This is sufficient to indicate affirmance if, after learning that an unauthorized act was done on his account, the purported principal gave no indication of protest or disagreement, as a normal person in his position would have done. This failure to take action is evidence of a willingness to become a party to the transaction." § 37B, p. 67.

An equitable principle also comes into play. Good faith imposed a duty on Caito Foods to speak up and inform Terminal of the wrongful construction. By acquiescing in the violation and accepting the benefits therefrom, there was affirmation of the wrongful construction. Thus, Caito Foods is equitably estopped to deny

disapproval and lack of authorization of the prohibited construction. *Erie-Haven, Inc.* v. *First Church of Christ* (1973), 155 Ind. App. 283, 292 N.E.2d 837; *Allen* v. *Powell* (1917), 65 Ind. App. 601, 115 N.E. 96; I.L.E., *Estoppel,* §§ 48-49.

Next, Caito Foods would have us believe that enclosure of the dock area was not in violation of the injunction because it was not performed on their "leased premises". However, it is manifest from the Record that Caito Foods used the dock area daily in connection with their rental of Units #318-320.

Unless otherwise agreed to or specifically reserved, everything which belongs to the demised premises in a lease or is used with and is appurtenant to the premises, and which is reasonably necessary to their *beneficial use and enjoyment,* will be considered as incident to the premises. *Black* v. *Ervin* (1961), 132 Ind. App. 470, 474-475, 176 N.E.2d 142; 51C, C.J.S., Landlord and Tenant, § 293, p. 745.

Furthermore, both parties originally agreed to the construction of an unenclosed dock directly adjoining Unit #320. This agreement was subsequently included in the November 24, 1971, Injunction . . . An Agreed Entry.

In the context used it was clearly implied by the conduct of the parties and the evidence before the court that "leased premises" included the dock area:

> "Judgments should be liberally construed so as to make them serviceable instead of useless. Necessary legal implications are included although not expressed in terms."
> *Ayres* v. *Smith* (1948), 227 Ind. 82, 84 N.E.2d 185; 49 C.J.S., *Judgments,* § 436, p. 864.

*See also,*

> *Local Union No. 135, Etc.* v. *Merchandise Warehousing Co., Inc.* (1959), 240 Ind. 153, 159 N.E.2d 388; I.L.E., *Judgment,* § 321.

ISSUE TWO

CONCLUSION—While the Contempt Judgment does provide for a "showing" of noncompliance with its affirmative direc-

tive before sanctions are imposed, it is defective in that it predetermines the penalty for noncompliance.

After finding Caito Foods (Defendants) guilty of contempt[1] for enclosing the dock area, the Contempt Judgment ordered removal of the prohibited improvements:

> "Defendants are found in Contempt of Court for permitting the erection and construction of overhead doors and framework thereof enclosing a part of the dock area adjoining the space leased by Defendants from Plaintiff. Defendants ordered to remove overhead doors and framework thereof by February 15, 1973, without damage to Plaintiff's premises, and failing to so remove, Defendants are ordered committed to jail *on showing* the Court that Defendants have not complied with this Court Order." (emphasis supplied)

Having found Caito Foods in contempt of court for violation of the Agreed Entry (Permanent Injunction), the trial court could have taken appropriate and necessary action in order to benefit the injured party, Terminal.[2]

> "The power of a court of chancery to enforce its order 'by attachment or otherwise, according to the exigency of the case' has been preserved to our circuit courts under the

---

1. 34-1-10-10 [3-2114]. Order disobeyed—Contempt.—"Whenever it shall appear to any court granting an order of injunction, or judge thereof, in vacation, by affidavit, that any person has wilfully disobeyed the order, after notice thereof, such court or judge shall award an attachment for contempt against the party charged, or a rule to show cause why it should not issue. The attachment or rule shall be issued by the clerk of the court, and directed to the sheriff, and shall be served by him."

2. 34-1-10-11 [3-2115]. Service of attachment—Action of court. "The attachment for contempt shall be immediately served by arresting the party charged, and bringing him into court, if in session, to be dealt with as in other cases of contempt; *and the court shall also take all necessary measures to secure and indemnify the plaintiff against damages in the premises.*" (emphasis added) The primary purpose of enforcement of civil contempt is "to coerce action for the benefit of the aggrieved party", Terminal. *Duemling* v. *Fort Wayne Community Concerts* (1963), 243 Ind. 521, 524, 188 N.E.2d 274; *Denny* v. *State* (1932), 203 Ind. 682, 698, 700, 182 N.E. 313.

so-called power to punish for civil contempt, which is properly not a power to punish, *but one to coerce by imprisonment or to impose money penalties for the benefit of the injured party, or 'to take all necessary measures to secure and indemnify the plaintiff against damages in the premises'*. (§ 1238 Burns, *supra*.)" [§ 1238 Burns is now 34-1-10-11, *see* Footnote 2, *infra*.] (emphasis added) *Denny* v. *State* (1932), 203 Ind. 682, 698, 700, 182 N.E. 313, 319.

Instead, an indulgent Trial Judge chose to issue a further Order requiring Caito Foods to remove the dock enclosure by February 15, 1973, i.e., the doing of an affirmative act.[3] This meant in the words of Justice Prentice in *Thomas* v. *Woollen* (1971), 255 Ind. 612, 266 N.E.2d 20, that "the matter and alleged offender is *again* brought to the attention of the court for appropriate action". (emphasis supplied) There must then

". . . be some prima facie showing that the order has been violated. There may be intervening circumstances that rendered compliance impossible or circumstances surrounding the violation may have rendered it relatively innocent. These are factors that should be taken into account in determining whether or not there has been a contempt *and, if so, what the penalty should be. They cannot be determined in advance. To anticipate the breach, assess the penalty and provide for the execution*, it appears to us, amounts to the abandonment by the trial court of its responsibility in this area and should not be sanctioned." (emphasis supplied) *Thomas* v. *Woollen, supra.*, 255 Ind. at 617, 266 N.E.2d at 23.

The Contempt Judgment does provide for a "showing", which we assume means a rule to show cause, or attachment as required by IC 1971, 34-1-10-10 (Burns Code Ed.). How-

---

3. *Gompers* v. *Buck's Stove & Range Co.* (1911), 221 U.S. 418, 31 S.Ct. 492, 55 L.Ed. 797, 34 L.R.A. (N.S.) 874, which points out that violation of an order requiring affirmative action to be taken is remedial and can be coerced by imprisonment, and is to be distinguished from violation of a court order prohibiting the doing of an act which is punishable by fine only. "Imprisonment cannot undo or remedy what has been done nor afford any compensation for the pecuniary injury caused by the disobedience." Otherwise imprisonment would operate, "not as a remedy coercive in its nature, but solely as punishment for the completed act of disobedience." *Gompers*, 221 U.S. 418, 442, 31 S.Ct. 492, 498, 55 L.Ed. 797, 34 L.R.A. (N.S.) 874, 883, 884.

ever, it is defective in that it "anticipate[s] the breach, assess[es] the penalty and provide[s] for the execution". *After* it is determined at a subsequent show cause hearing that Caito has failed to comply without demonstrating intervening circumstances justifying noncompliance, then appropriate action may be taken. Automatic incarceration is forbidden by *Thomas*.

The judgment is affirmed insofar as it finds Caito Foods (the Defendants) in contempt and reversed insofar as it provides for incarceration after a showing of noncompliance with the Contempt Judgment.

Sullivan, P.J. and White, J., concur.

NOTE.—Reported at 320 N.E.2d 821.