**Burton R. GREEN, Appellant–Respondent,**

**v.**

**Marjorie MAGINN (Successor to Donna C. Bennett), Commissioner of the Department of Insurance of the State of Indiana and the Liquidator of Consolidated National Insurance Company, Appellee–Petitioner.**

**No. 49A02–9701–CV–7.**

Court of Appeals of Indiana.

Aug. 27, 1997.

Barbara J. Germano, Price & Findling, Indianapolis, for Appellant–Respondent.

James L. Touhy, William T. Niemier, Wood Touhy Gleason Mercer & Herrin, Indianapolis, for Appellee–Petitioner.

## OPINION

FRIEDLANDER, Judge.

This case arises out of insurance rehabilitation and liquidation proceedings involving

Consolidated National Life Insurance Company, of which Burton R. Green was president, instituted by the Commissioner of the Department of Insurance of the State of Indiana ("Liquidator"). On July 21, 1994, the trial court entered an order of liquidation which provided in pertinent part:

8. No action at law or equity outside [Marion Circuit Court] may be brought against Consolidated, its Liquidator, its former Rehabilitator, or its assets, whether in Indiana or elsewhere, nor shall any such existing action outside this Court be maintained or further presented.

9. All persons and entities are hereby enjoined from:

a. The obtaining of any preference, judgment, attachment, garnishment or lien against Consolidated or its property or assets, or any part thereof, wherever located, or the levying of execution against Consolidated or its property or assets, or any part thereof, wherever located, or the commencement, prosecution or further prosecution of any suit, action or proceeding having any such purpose or effect;

\*   \*   \*   \*   \*   \*

d. Any other action that might lessen the value of Consolidated's assets or prejudice the rights of its policyholders, insureds, creditors, shareholders, agents, reinsurers, brokers or other person, or the administration of this proceeding under Indiana Code 27–9.

*Record* at 181–182. Despite these provisions, on December 1, 1995, Green filed a second amended complaint in the Pike Circuit Court in Alabama against Liquidator and several members of Liquidator's staff. Liquidator thereafter filed a petition for contempt, alleging that Green had violated the injunctive language contained within the order of liquidation. Green failed to appear in person or by counsel at a hearing to show cause why he should not be held in contempt for violation of the liquidation order. The trial court thereafter found Green in contempt for violating the court's liquidation order and issued an October 15, 1996 contempt citation and order to dismiss lawsuits, which stated in pertinent part:

6. The Court finds that the Respondent Green (together with other plaintiffs) willfully violated the Order of Liquidation by filing a Second Amended Complaint on or about December 1, 1995 in the Circuit Court of Pike County, Alabama under Civil Action No. CV–95–171 ("Alabama Court Action") against Consolidated, its Liquidator (Petitioner herein), its former Rehabilitator Mortel (Petitioner's predecessor), against . . . , all employees and representatives of petitioner acting on behalf of petitioner in her official capacity and such action being also against Consolidated's assets, seeking to claim certain Pike County, Alabama real estate of Consolidated, which real estate was the subject of this Court's Order to the Liquidator Sell filed herein August 8, 1995. Respondent Green is further found in contempt for seeking to have this Court's Liquidation Order void [sic] by the Alabama State Court.

7. The Court further finds that Respondent Green has also willfully disobeyed the above portions of the Order of Liquidation by causing the joining as parties plaintiff in the Alabama Court Action the following corporations of which he serves as controlling officer, director and stockholder: Green Rivers Forest, Inc.; Green Land Company, Inc.; American Educators Financial Corporation and CNL Marketing Corporation of Alabama.

8. The Court further finds that the actions of Respondent Green have been willful and contemptuous and designed to hinder, delay, obstruct and prevent the orderly liquidation of Consolidated as prescribed by this Court's Order of Liquidation. Such actions are in disobedience of the prohibitions and injunctions of the Order of Liquidation described above prohibiting Respondent Green and others from initiating and pursuing such legal actions "outside this Court". Such acts of Respondent Green constitute indirect contempt of this Court as set forth in I.C. 34–4–7–3.

IT IS, THEREFORE, ORDERED, ADJUDGED AND DECREED that *Burton R. Green*, individually, and as Chairman of American Educators Financial Corporation, President of Green Land Company,

Inc., President of Green Rivers Forest, Inc., and President of CNL Marketing Corporation, *is found in contempt of this Court's Liquidation Order and is hereby ordered and directed to dismiss, with prejudice, forthwith, the Alabama court action by such Respondent, individually, and by such four corporate entities controlled by him, against [Liquidator],* both in her official capacity and individually, [Liquidator's staff members], all of whom are past or present employees of [Liquidator] and [Liquidator]'s Insolvency Office, individually and in their official capacities as representatives of [Liquidator] in the liquidation of Consolidated. *Said Respondent Green is further ordered to submit to this Court proof of the filing of such Dismissal, with prejudice, within twenty (20) days of the date of this Order and failing such, Respondent Green shall be subject to arrest and imprisonment by the Sheriff of Marion County, Indiana, such incarceration to continue until Respondent executes and causes to be filed such Dismissal, with prejudice, of such Alabama court action against the above-named parties.*

*Record* at 441–443 (emphasis supplied).

After this court granted Green's petition to accept jurisdiction of this interlocutory appeal, the trial court stayed the October 15, 1996 order pending the disposition of this appeal or until further order of the court.

Green's sole claim on appeal is that the provision in the contempt order which subjects him to arrest and imprisonment upon his failure to file a dismissal of the Alabama suit is an unlawful "penalty in anticipation of a future contempt", Appellant's Brief at 1.

We affirm in part and reverse in part.

█ The proper procedure to follow when there has been a failure to comply with a contempt order which requires the doing of an affirmative act is for the trial court to bring the offender before the court a second time and then determine an appropriate remedy, if any. *See Thomas v. Woollen,* 255 Ind. 612, 266 N.E.2d 20 (Ind.1971); *Bottoms v. B & M Coal Corp.,* 405 N.E.2d 82 (Ind.Ct.App. 1980); *Caito v. Indianapolis Produce Terminal, Inc.,* 162 Ind.App. 590, 320 N.E.2d 821

(1974). In *Thomas,* the trial court entered a March 11, 1968 order requiring the defendants to close a driveway that was located in violation of restrictive covenants and "to take all reasonable measures in the future as occasion arises", *Thomas,* 266 N.E.2d at 21, to prevent its use. On March 24, 1969, the trial court entered a contempt judgment, which awarded the plaintiffs damages, attorney fees, and costs and ordered the defendants to take affirmative action within a prescribed period of time. The contempt judgment provided:

> [I]n the event such [affirmative] action not be completed within such period, the defendants [shall] pay an additional sum of $300.00 damages and the sheriff [shall] incarcerate the defendant James G. Thomas and confine him until he has complied.

*Id.* Our supreme court stated:

> It is not to be anticipated that the lawful orders of the court will be violated but rather that they will be obeyed. If they are violated, however, the remedy is by way of attachment or a rule to show cause. In either event, the matter and alleged offender is again brought to the attention of the court for appropriate action. There must be some prima facie showing that the order has been violated. There may be intervening circumstances that rendered compliance impossible or circumstances surrounding the violation may have rendered it relatively innocent. These are factors that should be taken into account in determining whether or not there has been a contempt and, if so, what the penalty should be. They cannot be determined in advance. To anticipate the breach, assess the penalty and provide for the execution, it appears to us, amounts to the abandonment by the trial court of its responsibility in this area and should not be sanctioned.

*Id.* 266 N.E.2d at 23 (citations omitted). The court reversed the contempt judgment "insofar as it prescribed the damages and incarceration in anticipation of a future contempt." *Id.*

Likewise, in *Caito* and *Bottoms,* this court reversed contempt judgments to the extent that each judgment predetermined the penal-

ty for noncompliance and ordered automatic incarceration.

In *Caito,* the trial court entered an order enjoining Caito Foods from constructing an enclosed dock next to the warehouse premises it leased from the Indianapolis Produce Terminal. The Terminal thereafter filed a motion for contempt, alleging that Caito Foods had violated the court's injunction by completely enclosing the dock. Following a contempt hearing, the trial court entered a contempt judgment against Caito Foods, which stated:

> Defendants are found in Contempt of Court for permitting the erection and construction of overhead doors and framework thereof enclosing a part of the dock area adjoining the space leased by Defendants from Plaintiff. Defendants ordered to remove overhead doors and framework thereof by February 15, 1973, without damages to Plaintiffs premises, and failing to so remove, Defendants are ordered committed to jail on showing the Court that Defendants have not complied with this Court order.

*Caito,* 320 N.E.2d at 824. This court, applying *Thomas,* concluded that the contempt judgment was defective in that it predetermined the penalty for noncompliance. It noted that the trial court, having found Caito Foods in contempt for violation of the injunction, "could have taken appropriate and necessary action in order to benefit the injured party". *Id.* 320 N.E.2d at 826. Nonetheless, this court concluded that, because the trial court issued a further order requiring Caito Foods to remove the dock enclosure by a certain date, the court was required to again bring Caito Foods before it. This court in *Caito* stated in pertinent part:

> [A]n indulgent Trial Judge chose to issue a further Order requiring Caito Foods to remove the dock enclosure by February 15, 1973, i.e., the doing of an affirmative act. This meant in the words of Justice Prentice in *Thomas v. Woollen* (1971), 255 Ind. 612, 266 N.E.2d 20, that "the matter and alleged offender is *again* brought to

the attention of the court for appropriate action".

*Id.* at 826–827.

*Caito* and the instant case are indistinguishable in all pertinent respects. The July 21, 1994 order of liquidation entered in this case, which clearly prohibited and enjoined Green from filing a second amended complaint in the Pike Circuit Court in Alabama on December 1, 1995, is analogous to the order entered in *Caito* which enjoined Caito Foods from constructing an enclosed dock on premises it leased from the Terminal. The remaining facts of the two cases are also analogous. After Green filed his second amended complaint in the Alabama court, Liquidator filed a petition for contempt, alleging that Green had violated the injunctive language in the order of liquidation. The trial court held a hearing, found Green in contempt for violating the court's liquidation order, and issued a contempt citation and order to dismiss the Alabama action. Similarly, in *Caito,* after Caito Foods allowed the construction of an enclosed dock in contravention of an order enjoining such action, the Terminal filed a motion for contempt, alleging that Caito Foods had violated the court's injunction by enclosing the dock. The trial court in *Caito* held a contempt hearing, found Caito Foods in contempt, and issued a contempt judgment which ordered Caito Foods to remove the overhead doors and framework which had been constructed in violation of the court's injunction. In both *Caito* and the case before us, the trial courts ordered that the offending parties be jailed if they failed to comply with the contempt orders within a certain period of time.

In *Bottoms,* the court stated:

Although there are older cases to the contrary, we believe *Thomas* and *Caito* control the issue. Fundamental notions of fairness demand an opportunity for a noncomplying party to present reasons for failure to follow the mandates of a court. The person may have been prevented from complying for a myriad of reasons we cannot even begin to imagine. In such a case a court could properly conclude no additional sanctions or coercions would be called for. In the other extreme, the only

excuse for noncompliance might be pure stubborn rebellion, a situation in which relatively harsh measures, including incarceration, would be justified. In either case the noncomplying party must first be given the opportunity to explain the noncompliance. A court cannot "anticipate the breach, assess the penalty and provide for the execution." *Thomas v. Woollen, supra,* 255 Ind. at 617, 266 N.E.2d at 23. *Bottoms,* 405 N.E.2d at 89 (footnote omitted).

■ The contempt order in this case is reversed insofar as it provides for automatic incarceration for noncompliance. Green must obey the court order to dismiss the Alabama court action. This court will assume compliance. If Green does not comply with the contempt order, Green must then be given the opportunity, consistent with *Thomas, Caito,* and *Bottoms,* to explain such noncompliance. In the event Green fails to appear or his explanation is deemed inadequate, the court may then be justified in ordering incarceration until he complies.

Judgment affirmed in part and reversed in part. This case is remanded to the trial court for further proceedings consistent with this opinion.

SULLIVAN, J., concurs with separate opinion.

KIRSCH, J., dissents with separate opinion.

SULLIVAN, Judge, concurring.

While I thoroughly agree with the import of the dissent in that it seems an unnecessary procedural formalism to require another evidentiary hearing in order to incarcerate a contemptuous defendant, I must concur in the majority opinion in light of *Thomas v. Woollen* (1971) 255 Ind. 612, 266 N.E.2d 20. That case is binding upon us despite arguable misapplication in *Bottoms v. B & M Coal Corp.* (1980) Ind.App., 405 N.E.2d 82 and in *Caito v. Indianapolis Produce Terminal, Inc.* (1974) 162 Ind.App. 590, 320 N.E.2d 821.

In this regard, I am unable to discern any meaningful difference between the "further affirmative action" ordered in *Thomas* and the further action ordered here, i.e. dismissal of the Alabama lawsuit.[1] That the "further" act contemplated here was a simple and straightforward dismissal in order to purge Green of his already adjudicated contempt does not appear, under the *Thomas* holding, to permit coercive incarceration absent a new show cause order and opportunity to be heard. Such conclusion, in essence forbids a common sense trial court order which would afford a contemnor an opportunity to avoid jail by purging the contempt. Any such purge order would necessarily require an affirmative act to purge the contemptuous act. Nevertheless, the existing case law seems to impose a new and seemingly unnecessary level of adjudication upon such an "indulgent [t]rial [j]udge". See *Caito, supra,* 320 N.E.2d at 826.

Conversely, the present state of Indiana law as drawn from the cited cases, would seem to encourage, if not require, immediate coercive jailing upon a determination of contempt. Clearly, in many if not most situations, the contemnor will be unable to purge

---

1. The court in *Thomas* found significance in the fact that the contempt consisted not only of the failure to close a driveway but failure to take reasonable measures "in the future" in order to prevent the use of the driveway. In doing so, it concluded that the subsequent judgment of contempt erroneously provided for damages or incarceration if "further" affirmative action were not completed within a specified time period. However, it would seem that the "further" affirmative action contemplated by the latter order was nothing more than the doing of the acts which were not done earlier and which formed the basis for the contempt.

The injunction in *Thomas* ordered defendants "to take all reasonable measures in the future as occasion arises in order to prevent anybody from crossing the green strip [driveway] prescribed in the preceding paragraph." *Thomas* Record at 18. In the "purge" order, the defendants were ordered to "take all measures necessary to keep this east leg of their driveway closed to traffic for so long as the permanent injunction decree entered by this Court in this cause remains in full force and effect" (*Thomas* Record at 41) and to do so within a specified time period failing which the defendants were ordered to pay the sum of $300.00 and be committed to jail.

To this extent, the order merely permitted the defendant to purge the contempt. Yet, the *Thomas* court required a new show cause order and hearing. Accordingly, the same result is indicated in the case before us.

the contempt while he is incarcerated, e.g., paying a child support arrearage. Again, for this reason, a simple purge order should be permitted even though it may require some affirmative act on the part of the respondent. *See Brown v. Brown* (1933) 205 Ind. 664, 187 N.E. 836; *Denny v. Brady* (1932) 203 Ind. 682, 182 N.E. 313. In such instances it has been stated that "the keys to the jail [are] in [the respondent's] pocket." *Duemling v. Fort Wayne Community Concerts, Inc.* (1963) 243 Ind. 521, 188 N.E.2d 274, 277.

A new show cause order and evidentiary hearing should not be required unless compliance with the "affirmative act" directed by the purge order is subject to differing interpretations or has multiple components. In the latter instance a "punishment" for anticipated non-compliance would be premature. It is this type "affirmative action" to which the holding of *Thomas* should be restricted. It should not, as was done in *Caito* and in *Bottoms,* be applied to the doing of a uncomplicated, unambiguous, act which would purge an already adjudicated contempt.[2]

Perhaps our Supreme Court will revisit its holding in *Thomas,* or at least clarify and delineate its application to contempt purge orders. Until such time, however, I am constrained to apply it to the facts before us. For this reason I concur.

KIRSCH, Judge, dissenting.

I respectfully dissent. The effect of the trial court's ruling was to find the appellant-respondent in contempt, order him incarcerated until the contempt was purged, and stay the incarceration for twenty days to allow the purge. I believe that such action was within the trial court's authority.

Green's sole claim on appeal is that the provision in the contempt order which subjects him to arrest and imprisonment upon his failure to file a dismissal of the Alabama suit is an unlawful "penalty in anticipation of a future contempt." *Appellant's Brief* at 1. Green argues that the proper procedure to

follow when there has been a failure to comply with a contempt order which requires the doing of an affirmative act is for the trial court to bring the offender before the court a second time and then determine an appropriate remedy, if any. Green relies upon the decision of our supreme court in *Thomas v. Woollen,* 255 Ind. 612, 266 N.E.2d 20 (1971).

In *Thomas,* the trial court entered an order requiring the defendants to close a driveway that was located in violation of restrictive covenants and "to take all reasonable measures in the future as occasion arises" to prevent its re-use. 255 Ind. at 613, 266 N.E.2d at 21. Eleven days later, the trial court entered a contempt judgment, which awarded the plaintiffs damages, attorney fees, and costs and ordered the defendants to take affirmative action within a prescribed period of time. The contempt judgment provided:

> [I]n the event such [affirmative] action not be completed within such period, the defendants [shall] pay an additional sum of $300.00 damages and the sheriff [shall] incarcerate the defendant James G. Thomas and confine him until he has complied.

*Id.* Our supreme court stated:

> It is not to be anticipated that the lawful orders of the court will be violated but rather that they will be obeyed. If they are violated, however, the remedy is by way of attachment or a rule to show cause. In either event, the matter and alleged offender is again brought to the attention of the court for appropriate action. There must be some prima facie showing that the order has been violated. There may be intervening circumstances that rendered compliance impossible or circumstances surrounding the violation may have rendered it relatively innocent. These are factors that should be taken into account in determining whether or not there has been a contempt and, if so, what the penalty should be. They cannot be determined in advance. To anticipate the breach, assess

2. If the "further affirmative action" ordered by the trial court in *Thomas* in its "purge" order was, in fact, different in kind or degree from merely curing the contempt, the application of *Thomas* in *Caito* and in *Bottoms* would appear

misplaced. On the other hand, both the *Caito* and *Bottoms* courts may have read the *Thomas* orders as do I. See footnote 1, *supra.* In that event, it is understandable why the two Appellate Court decisions felt bound by *Thomas.*

the penalty and provide for the execution, it appears to us, amounts to the abandonment by the trial court of its responsibility in this area and should not be sanctioned. *Id.*, 255 Ind. at 617, 266 N.E.2d at 23 (citations omitted). The court reversed the contempt judgment "insofar as it prescribed the damages and incarceration in anticipation of a future contempt." *Id.*

In *Caito v. Indianapolis Produce Terminal, Inc.*, 162 Ind.App. 590, 320 N.E.2d 821 (1974) and *Bottoms v. B & M Coal Corp.*, 405 N.E.2d 82 (Ind.Ct.App.1980), this court reversed contempt judgments to the extent that each judgment predetermined the penalty for noncompliance and ordered automatic incarceration. In *Bottoms,* the court stated:

> Although there are older cases to the contrary, we believe *Thomas* and *Caito* control the issue. Fundamental notions of fairness demand an opportunity for a non-complying party to present reasons for failure to follow the mandates of a court. The person may have been prevented from complying for a myriad of reasons we cannot even begin to imagine. In such a case a court could properly conclude no additional sanctions or coercions would be called for. In the other extreme, the only excuse for noncompliance might be pure stubborn rebellion, a situation in which relatively harsh measures, including incarceration, would be justified. In either case the noncomplying party must first be given the opportunity to explain the noncompliance. A court cannot 'anticipate the breach, assess the penalty and provide for the execution.' *Thomas v. Woollen, supra,* 255 Ind. at 617, 266 N.E.2d at 23.

*Bottoms,* 405 N.E.2d at 89 (footnote omitted).

Each of the foregoing cases held that the trial court erred when it prescribed the penalty, including incarceration, for a future contempt. In each case the trial court ordered the defendant to take certain affirmative action beyond the purging of a present contempt. In *Thomas,* the defendants were ordered to close a driveway and to "take all reasonable measures in the future as the occasion arises" to prevent its re-use. 255 Ind. at 613, 266 N.E.2d at 21. In *Caito,* the defendants were ordered to remove overhead

doors without damage, and in *Bottoms* the defendants were ordered to pay a sum of money within a specified period of time. In each case, a question remained for judicial determination: whether the defendant's failure to perform the affirmative act would be contemptuous.

The contempt order in this case can be distinguished from the above cases. In the present action, the penalty which the trial court imposed was for a past and continuing contempt, not one occurring in the future. If Green failed to dismiss the Alabama lawsuit as ordered, no question remained for judicial determination. The contempt had already occurred and had been adjudicated. Unlike the cases upon which Green relies, the only affirmative act required here was that the present contempt be purged. Green was to be incarcerated only if he failed to do so.

In *Bottoms,* we said that "Fundamental notions of fairness demand an opportunity for a non-complying party to present reasons for failure to follow the mandates of a court." *Bottoms,* 405 N.E.2d at 89. There are no such concerns here. Green had the opportunity to appear and present whatever reasons he may have claimed for his failure to follow the mandates of the trial court's liquidation order. He failed to do so. Green does not claim in this appeal that the trial court's contempt finding was erroneous. He only claims that the trial court erred by ordering him incarcerated if he failed to purge his contempt.

Moreover, while I believe that *Thomas* and *Caito* can be distinguished from the instant case, at the same time I believe that a question should be raised whether such decisions rest upon a faulty premise which should be re-examined. The premise upon which both *Thomas* and *Caito* rest is that the trial court's orders anticipated future non-compliance and pre-determined the sanction for such non-compliance. In actuality, in both cases the trial court determined that a contempt had occurred, imposed a penalty for such contempt and afforded the respondent the opportunity to avoid that penalty by purging the contempt. The faulty premise yields an illogical conclusion: namely, that although a trial court can determine that a

respondent is in contempt and incarcerate that respondent immediately until the contempt is purged, the court cannot hold a respondent in contempt but defer incarceration to allow that purge to occur.

Requiring trial courts to hold subsequent hearings to determine whether there were justifications for the respondents' failures to purge an already adjudicated contempt serves no purpose and imposes significant additional burdens on both the court and the party who initially sought the contempt sanction. It also extends contempt proceedings where the respondent was ordered to purge the contempt or be incarcerated *ad infinitum* because a hearing would always be required to determine whether the respondent's failure to purge the already adjudicated contempt was in itself contemptuous.

I would affirm the trial court in all respects.